JOE E. NUSBAUM, Secretary, Department of Administration
You have asked for my formal opinion as to whether there would be a violation of Art. IV, sec. 26, Wis. Const., if the faculty of the University of Wisconsin were to receive salary increases for any period during the current biennium prior to the enactment of the State budget. The answer depends upon a determination of the date when the faculty contracts were entered into with the university. The State budget for the current 1971-73 biennium is in ch. 125, Laws 1971, which became effective on November 5, 1971. *Page 490 
Article IV, sec. 26, Wis. Const., provides in part:
"The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office . . ."
Section 36.06 (1), Stats., provides:
"(1) The Board of regents shall enact laws for the government of the university in all its branches; elect a president and the requisite number of professors, instructors, officers and employes, and fix the salaries and the term of office of each, and determine the moral and educational qualifications of applicants for admission to the various courses of instruction; but no instruction, either sectarian in religion of partisan in politics, shall ever be allowed in any department of the university; and no sectarian or partisan tests shall ever be allowed or exercised in the appointment of regents or in the election of professors, teachers or other officers of the university, or in the admission of students thereto or for any purpose whatever."
A prior opinion of this office reported at 36 OAG 107 and dated March 22, 1947, concluded that a statute authorizing temporary salary increases to State civil service employes could not operate retroactively by reason of Art. IV, sec. 26, Wis. Const.
A more recent opinion Reported in 54 OAG 63 and dated July 14, 1965, concluded that merit increases in salary for State employes in the classified service should be granted by departments in accordance with the new provisions of the classification and compensation plan for the 1965-67 biennium approved by the Joint Committee on Finance on June 30, 1965, with an effective date of July 1, 1965, without any further action by the legislature. The budget bill subsequently enacted by the legislature simply furnished the new appropriations needed by the State for the biennium, including its finding of classification and compensation plan approved by the Joint Committee on Finance. Implicit in the opinion is the conclusion that the action of the Joint Committee *Page 491 
on Finance obligated the State to its classified employes prior to July 1 of the ensuing biennium.
Section 16.105, Stats., sets forth the procedure for adopting the classification and compensation plan. The respective roles of the director of the Bureau of Personnel, department heads, the Joint Committee on Finance and others is detailed in the statute. By way of contrast, the respective roles of those involved in the implementation of the University salary system is not found in the statutes. Section 36.06 (1), Stats., gives the Board of Regents the authority and responsibility to fix the salaries and the term of office of its professors, instructors, officers and employes. The long-standing legislative practice would include within this grant of power the authority to fix salary increases as well.
This office said the following in 55 OAG 92 (1966) at page 93:
". . . Section 16.105 relates to the `classification and compensation plan.' It has nothing to do with salaries or classification in the unclassified service."
In the same opinion at page 101 the following was stated:
"It can be noted that Ch. 36, regulating the University of Wisconsin grants the board of regents the express power to fix the salaries and the term of office of its president `professors, instructors, officers andand employees. This language expressly includes all employes, whether classified or unclassified. Sec. 36.06 (1)."
The detail as to how university salaries become fixed comes from an examination of prior practices which have developed over the years.
A University faculty member is considered reappointed for the following year if he does not receive prior notice to the contrary from his employing department. The latest date by which nonreappointment notice normally can be given is March 1 in the case of an initial year appointee and earlier for longer term employes.
Usually, on or before March 1, the faculty member's contract is considered renewed for the subsequent year and his *Page 492 
employing department determines, no later than June 30, and usually in early March, the conditions of his contract for the coming year including a formal salary recommendation. The salary recommendation is voted by the department, approved by the administration and included in the budget proposed for the following year. That budget is normally submitted to the Board of Regents no later than June of the previous fiscal year for concurrence and final action if a State budget has been passed by the legislature, or concurrence subject to funding upon passage of the State budget.
The essential steps involved in the adoption of the University faculty salary system are related to the budget process. The eventual payment of salary increases depends upon the actions of department chairmen, deans of colleges, the chancellor, the president, the Board of Regents and the State Legislature. However, it should be noted that the legislature does not fix the salaries of individual faculty members.
On or before June 28, 1971, pursuant to a directive of the University's central administration, department chairmen in conjunction with deans of colleges submitted their recommendations for the allocation of salary increases for the ensuing year, within the 3 percent limit set by the Joint Committee on Finance. They were incorporated in the budget process by the chancellor and president, and subject only to the formal approval of the Board of Regents and funding by the State Legislature.
Although the budget enacted for the current biennium does not contain funds for salary increases to cover the period of July 1 to November 13, 1971, this does not appear to be due to a change in the policy of the Board of Regents or State Legislature relating to these salary increases. The intervening factor was President Nixon's Executive Order No. 11615 of August 15, 1971, issued pursuant to the Economic Stabilization Act of 1970, Title II, Sec. 202-203 P.L. 91-379, commonly known as the "wage-price freeze." According to information contained in your letter of inquiry, it is acknowledged by all parties concerned that funding would have been provided by the legislature had it not been for a possible misapplication of this order. *Page 493 
Formal action of the Board of Regents in adopting its budget incorporating the new salary increases occurred on October 8, 1971, and salaries did not become fixed until that time. Section 36.06 (1), Stats., gives the authority to fix salaries to the Board of Regents, not department chairmen. Accordingly, payment of faculty salaries at the newly fixed rate for the period prior to the adoption of the budget and salaries by the Board of Regents on October 8, 1971, would violate Art. IV, sec. 26, Wis. Const. The resolution adopted by the Board of Regents is set forth immediately following this opinion.
There is no question that faculty members are employes of the Board of Regents, and that a contractual relationship exists. In Butler v. TheRegents of the University (1873), 32 Wis. 124, 131, it was stated:
". . . We do not think that a professor in the university is a public officer in any sense that excludes the existence of a contract relation between himself and the board of regents that employed him, in respect to such employment. . . ."
53 Am. Jur. 2d, Master and Servant, § 15 states the following in regard to the formation of the master and servant relationship:
". . . The relationship is a product of mutual assent, that is, of a meeting of minds expressed by some offer on the part of one to employ or to work for the other and an acceptance on the part of such other. No person can be subjected against his will to the full measure of the obligations which the law has attached to the contract of service. However, consent to the relation need not be written or even verbal; it may, and very often does, rest in the implication of circumstances. Proof of the existence of the relation can be made as fairly and fully by circumstantial evidence as it can by evidence which is direct . . ."
In an early opinion from this office reported in 10 OAG 1099 and dated November 18, 1921, the following reference is made to the manner of appointment:
"The members of the present instructional staff were appointed in the usual manner. Negotiations with the candidate *Page 494 
for a position on the instructional staff were conducted by the chairman of the department concerned or by the dean of the college. The salary agreed upon by the candidate and the department in consultation with the dean of the college was with the approval of the president, entered upon the budget, along with the name and the rank of the candidate.
"Upon the recommendation of the president and adoption by the board of regents, those whose names appear in the 1921-1922 budget were appointed to serve at the salaries indicated opposite their names. It has not been customary for the regents to require formal acceptance of an appointment . . .
"* * *
"Under the facts and circumstances stated the budget constitutes an offer by the persons named therein to accept employment for the several salaries there named. The appointment made by the board of regents through the adoption of the budget and of the recommendations contained therein constitutes in the law an acceptance of those propositions and constitutes a contract between the parties."
The process is essentially the same today, and I would concur with this reasoning of my predecessor.
In a communication subsequent to the initial request you asked me to include comment upon faculty promotional pay increases and women's equity pay adjustments intended to be retroactive to July 1, 1971. These pay adjustments were directly tied into the University's budget process along with the faculty salary increases previously discussed, and are all subject to the same effective date. Contracts were entered into on October 8, 1971, between the Board of Regents and employes of the University, subject to subsequent funding by the State Legislature. Any payments prior to that date would violate Art. IV, sec. 26, Wis. Const. Any payments are also subject to funding by the legislature, and such funding has not been provided for the period ending November 13, 1971.
RWW:APH *Page 495