THE PEOPLE *ex rel.* The Illinois ,Midland Railway Company

*v.*

THE SUPERVISOR AND CLERK OF TOWN OF WAYNESVILLE.

1.  MUNICIPAL SUBSCRIPTION—*compliance with conditions necessary.*  Where a township voted a subscription of $50,000 of the capital stock of a railway company, to be paid in bonds, under a law providing that no bonds should be delivered nor any payment made under such subscription until an amount of work was done on such road in the town, or on such part of the line of the road as the authorities issuing the bonds should designate, *equal in value to the amount of bonds to be issued,* and the condition of the vote was, that the bonds were to be delivered when work was done in the township to the amount of such bonds, it was *held,* that the building of the road through the town at a cost of only $30,000, or even $41,000, was not a substantial compliance with the conditions, and that the court would not compel the issue of the bonds voted.

2.  SAME—*change of conditions by subsequent vote not authorized.*  In the absence of an express authority in the law to that effect, the conditions upon which a municipal subscription is voted can not be changed by a subsequent vote, either directly upon the proposition or indirectly upon a proposition to make a donation of a small sum, with new conditions as to the donation, and the issuing of bonds under the prior vote.  Such subsequent election is *ultra vires,* and the act void, being unsanctioned by law.

3. SAME—*charter construed as to deviation from conditions.* Where the charter of a railway company, authorizing the voting of municipal subscriptions for stock, contained a proviso, that the bonds should not be issued nor any payment made on the subscription until an amount of work should be done on the railroad in the town, or on such part of the line of the road as the authorities of the town should designate, equal in value to the amount of the bonds to be issued, it was *held,* that the charter, by fair intendment, required any deviation from the conditions therein prescribed to be submitted to the voters, and at the same election at which the subscription was voted, and that the town officers could not, at pleasure, make any change as to the part of the road upon which the requisite amount of work should be expended. The authorities of the town, in such case, are the voters.

4. MANDAMUS—*practice as to trial of issues of fact.* The submission to a jury of the issues of fact, upon a petition for a *mandamus,* as made by the petition and answer alone, without any pleas, is contrary to the well established practice, as tending to confuse the jury by too large a number of issues. Issues should be formed only upon the material facts in dispute.

5. NEW TRIAL—*finding on issues of fact in petition for mandamus.* The jury being the judges of the facts submitted to them, this court, not having the same opportunity as the court and jury trying the case of judging of the credibility and weight of the evidence, will not set aside the finding of the jury on issues of fact in a petition for a *mandamus,* unless it clearly appears to be unsupported by the evidence.

6. POWERS—*unauthorized, can not be exercised indirectly.* Where the law does not authorize an act to be done directly, it can not be accomplished indirectly.

7. SAME—*when exhausted by exercise.* As a general rule, where the law confers a power, and the persons upon whom it is conferred act under it, the power is exhausted, unless the same authority authorizes its subsequent exercise. If a municipal corporation is authorized to subscribe a certain amount in aid of a railway company, and but a part is subscribed, it seems the power is not exhausted, but other subscriptions may be made to the amount named; and if the attempt to exercise the power proves ineffectual, by the non-observance of some essential requirement, the power may still be exercised.

This was an application by the Illinois Midland Railway Company for a *mandamus,* against the supervisor and town clerk of the town of Waynesville, in De Witt county, to compel them to issue and deliver to the relator $50,000 of the bonds of the town, upon a subscription voted by the electors of the town to the relator company.

Mr. R. G. INGERSOLL, Mr. W. S. BUSH, and Mr. D. McCUL-LOCH, for the relator.

Messrs. STEVENSON & EWING, for the respondents.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The charter of relator (sec. 9, Private Laws 1869, vol. 3, p. 173,) provides, that any city, incorporated town or township situated on, or near to, the line of the railroad as it shall be surveyed or thereafter located, shall be authorized to hold elections to determine whether such municipalities would subscribe for shares of its capital stock and issue bonds to pay therefor. It prescribes the manner of calling elections and the mode in which they should be conducted; but the section contains this proviso: "*Provided*, that such bonds shall not be delivered to said railroad company nor any payment be made on such subscription until an amount of work shall have been done on said railroad in such town, or on such part of the line of said railroad as the authorities of such city, incorporated town or township issuing such bonds shall designate, equal in value to the amount of bonds to be issued."

Under this law, notice was given, and an election held in the township of Waynesville on the 9th day of August, 1869, to determine whether the municipality would subscribe for $50,000 of the shares of stock of relator's railroad, and issue bonds in payment therefor. The election resulted in favor of subscription.

The petition to have the election called and the notice thereof contained this condition: "That the said railroad company shall build said railroad through the town of Waynesville, and permanently establish and locate a station within one-quarter of a mile of the public square or district school house in said town, the bonds for the same to be issued by the proper township officers; said bonds to bear ten per cent interest from date of issuing, and to be delivered to the said

railroad company whenever work is done to the amount of said bonds in said township."

Subsequently, on the 20th of September, 1869, another election was held, pursuant to a previous notice. This election was to determine whether the township would donate $100 to the company, and the notice contained this proviso: "*Provided*, said money shall be payable to the order of the president of said railroad company, to pay the engineer for surveying said route through the township of Waynesville, making estimates and surveys: *Provided, further*, that as to the $50,000 already subscribed by the vote of said township on the 8th day of August, A. D. 1869, the bonds shall issue on said subscription and be delivered by the proper authorities to the said company, as follows: $25,000 of said bonds as aforesaid shall be delivered to said railroad company when the road is graded, bridged and tied through the townships of Barnett and Waynesville, and the other $25,000 in bonds shall be delivered to said railroad company when the said road is graded, bridged and tied from Peoria to the town of Waynesville. Which election will be opened at eight o'clock in the morning, and continue open until six o'clock in the afternoon of the same day."

The company consolidated its road with another, and the new company, thus organized, assumed its present name. The road was built through the township of Waynesville, the station located, the bonds were demanded by the company, and the officers refused to issue them, this petition was filed and an answer put in by respondents, and the issues were submitted to a jury in the court below. There were no pleas filed or other issues made than were presented by the petition and answer, or other special issues of fact formed, but the trial was had before the jury on each allegation contained in the petition. This was contrary to the well established practice, and should not be sanctioned, as it tends to confuse the jury by too large a number of issues, material or immaterial; it incumbers the record, greatly enhances the expense of litiga-

tion, and can not subserve any beneficial end.   In such cases, there are usually but a small number of material facts disputed, and issues should only be formed on them.   There is, unfortunately, an apparent tendency to great prolixity in the trial of causes, to the great delay of justice and the burthen of heavy costs imposed upon the administration of justice. ·

The jury have found, and returned in favor of respondents, a large number of propositions, only a few of which are contested, which we shall consider, deeming it wholly unnecessary to comment on the others.   The following are the first, second and third of their findings:

"1.   We, the jury, find that the amount of work done by petitioner, prior to the filing this petition, on the Peoria, Atlanta and Decatur railroad, including all work and material furnished, grading, ties, iron, switch, and other improvements done and placed in Waynesville township, was $30,000.

"2.   We, the jury, find that the amount of grading, bridging, surfacing, and laying of track and engineering, depot buildings, and other work done on the ground on said Peoria, Atlanta and Decatur railroad, in said Waynesville township, was the amount of $15,000.

"3.   We, the jury, find that the petitioner had not, before the time of filing its petition, graded, bridged and tied the said road in question from Peoria to the town of Waynesville; but we find that petitioner had, prior to the time of filing this petition, graded, bridged and tied the road in question from the town of Waynesville to within six miles of Peoria, where·said road intersects the Toledo, Peoria and Warsaw railroad, and by a certain lease, or agreement, with said last named railroad company, it has obtained permission to run its trains from the said point to Peoria, in that way forming railroad connection between the town of Waynesville to the city of Peoria."

By their thirteenth finding, they determine that no stock was ever tendered by the railroad company to the officers of the township.

Here, the verdict finds that but $30,000 has been expended in the township, whilst the subscription was for $50,000, on the condition imposed by the charter, and other conditions imposed by the voters of the township. This finding includes labor, materials and all expenditures for or on account of the road in the township. It states that it includes all work and materials furnished, grading, ties, iron, switches, and other improvements done and placed in the township. This embraces the entire expenditure by the company within the prescribed limits. The second finding states that the entire expenditure, omitting the cost of the iron used, amounted to $15,000, which, when added, makes the sum of $30,000 named in the first finding.

According to the finding of the jury, only three-fifths of the amount required by the charter and the conditions upon which the subscription was voted was expended in the township. This is a large and material amount, so essential that it can not - be said that it may be omitted and still there be a substantial compliance with the condition. But if relator's evidence were alone considered, then this labor, material, etc., only cost about $41,000, lacking about $9000 of compliance with the terms upon which the bonds were to issue. And this is too large a sum to authorize a holding that the condition has been substantially performed.

It is urged that these findings are not sustained by the evidence. After a careful consideration of it, as certified in the record, we are unable to concur in the objection. We think the findings are not against the testimony. At the common law, and in many if not nearly all of the States of the Union, the jury are the judges of the facts submitted to their consideration, subject to be reviewed only by the judge trying the case; but our statute provides, where error is assigned, or in a case like the present, on motion, this court shall review the finding. Not being present at the trial, and being deprived of a knowledge of much that gives weight to or detracts from the credibility of witnesses, we can not weigh it with the same accuracy as the jury who try the

issue.   We can, therefore, only set aside the finding when it appears to be clearly unsupported by the evidence.   Such is . not the fact in this case, and this objection can not avail.

But, it is urged that these conditions were changed by a subsequent vote of the people of the township.   From the fact that by this vote it was proposed only to donate so small a sum, the presumption arises that it was supposed that a vote could not be legally had on a mere change of conditions imposed by the former vote to subscribe and issue bonds, and hence that was proposed that new conditions might be annexed, not only to the proposed donation, but the former conditions abrogated and the new ones annexed in their stead.   But if a direct vote to change the conditions upon which the first subscription was made, could not be legally had, we fail to perceive how that result could be accomplished by adding to the vote a proposition to donate the small sum of $100, or even any other sum. If the law did not authorize that to be done directly, surely no one would contend that it might be accomplished by indirection.

There is no provision in this charter authorizing an election to change the terms or conditions upon which a subscription has been already voted.   Nor are we aware of any general law that confers the power.   As a general rule, where the General Assembly confers a power, and the persons upon whom it is conferred act under it, the power is exhausted unless power is given to act again under the same authority.   It is true that an election to change the terms of a prior vote is not in terms prohibited by the charter, but when it is remembered that it is only by virtue of an express power conferred by the General Assembly that these municipal bodies can vote for these subscriptions, we would rather look for an express power to vote to make the change, than to find it expressly prohibited.   And if the second vote of the people to change the conditions previously annexed was without legislative sanction, then this election was *ultra vires,* and such act would be void.

It is true, that where the statute has authorized a municipal body to vote a subscription for an amount not exceeding a specified sum, and an election is held voting to subscribe but a portion of the sum named, by a liberal construction of the law it has been held, that such power has not been exhausted by the first election, but others may be held until the amount named is reached. But this court has never held that the terms and conditions, once imposed by a vote, may be changed by a subsequent vote and another election held for that purpose.

The charter, by fair intendment, we think, required any deviation from the conditions prescribed in section 9 to be submitted to the voters, and at the same election at which the subscription is voted. If the town officers might at pleasure, and without limit, designate the part of the road on which the work should be done equal to the amount subscribed, then the people might be entrapped into voting for a subscription on the conditions imposed by the charter, and be entirely opposed to its expenditure at any other place, and still their officers defeat their purpose by its expenditure at a remote point on the line of the road, and if never completed, the great and controling purpose of obtaining the construction of the road through their municipality would fail, and total loss of the subscription ensue. If such was the design of the General Assembly, why not directly empower the officers of the body to subscribe on such terms as they might choose, without a vote of the people? The construction contended for amounts virtually to conferring such a power. It is true that this section provides that the authorities of such corporations may designate the place where the work shall be done; but as the law made the voters the authorities of the corporation to vote the subscription, they were no doubt referred to as the authorities to change the conditions. Such would seem to be the meaning of the term in the connection in which it is used in this proviso, and the only meaning that can harmonize with the delegation of the power to subscribe, but such is not the meaning of that term in the previous part of the section.

The power to impose conditions was, therefore, exhausted at the first election. But had that effort to exercise the power been ineffectual, because of the non-observance of some indispensable requirement of the law, and the first election been void, another election might no doubt have been held, and other conditions imposed, on voting legally to subscribe. But that question is not presented by this record, as the validity of the first election is not challenged.

The company seem to rely on the first vote by showing a compliance with the conditions imposed, by an effort to prove a compliance therewith. If the second election was valid, or if the recording of the result in the records of the township could be claimed as altering the conditions, that would have abrogated the condition that the work should be done in the township. Then if regarded valid, why rely on the performance of that condition for a recovery? If that was still in force, then the subsequent vote of new conditions was void, and if the latter was binding, then the former was abrogated and of no effect. They are repugnant each to the other, and can not stand together.

The verdict of the jury is sustained by the evidence, and as relator has failed to show a compliance with the conditions of the subscription, the writ of *mandamus* is refused.

*Mandamus refused.*