Albert M. Goedde, Plaintiff-Appellee, v. Community Unit School District No. 7, Macoupin County, Illinois, Defendant-Appellee, W. H. Hartke, et al., Intervenors-Defendants-Appellants.

Gen. No. 10,202.

Third District.

April 2, 1959.

Released for publication April 18, 1959.

Alvin G. Whitehouse, of Gillespie, and Kinder & Dey, of Litchfield, for intervenors-appellants.

D. A. McGrady, of Gillespie, for defendant-appellee.

Verlie, Eastman, Schlafly & Godfrey, of Alton (H. H. Marshall, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE ROETH delivered the opinion of the court.

Plaintiff, a licensed architect, filed his complaint in the Circuit Court of Macoupin County seeking a declaratory judgment. The suit was brought against the Community Unit School District No. 7 seeking a declaration of rights under a contract entered into by

plaintiff and defendant. After answer by the school district, appellants, as taxpayers and residents of the school district, were granted leave to intervene and filed their answer to the complaint. The lower court entered a declaratory judgment in favor of the plaintiff and this appeal was perfected by the intervenors. By admission of the parties, the only questions presented to the lower court were questions of law and no testimony was taken in the court below.

From the record it appears that the defendant school district and the plaintiff entered into a contract on October 2, 1956, under the terms of which plaintiff was to perform certain architectural services for the construction of a new grade school building and the repair and improvement of other school properties, for a specified fee with an agreement that "no fee for preliminary work shall become due until a bond referendum has been passed to authorize construction of the work. If no bond referendum can be passed in two years after this contract is dated, then this agreement shall terminate."

The defendant school district then proceeded, pursuant to the provisions of the School Code, and after petition presented to it, to submit the propositions of building a new grade school and making the repairs and improvements, and issuing bonds to pay the cost thereof, to a vote of the residents of the school district. To this end the defendant school district adopted a resolution calling an election. No question is raised in this appeal as to any part of the proceedings or election with reference to the proposition to build a new grade school and make certain repairs and improvements on other school property, which proposition received a favorable vote. The only question involved herein involves the legality or validity of the election so far as the proposition to issue bonds is concerned, which also received a favorable vote.

81

The resolution adopted by the board of education of defendant district provided among other things as follows:

"That a special election is hereby called and shall be held in Community Unit School District #7, of Macoupin County, Illinois, on the 15th day of December, 1956, for the purpose of submitting to the legal voters of the said district the following propositions:

Proposition No. 2

Shall the Board of Education of Community Unit School District #7, Macoupin County, Illinois, be authorized to issue bonds of the said district to the amount of FIVE HUNDRED TWENTY-FIVE THOUSAND and no/100 ($525,000.00) Dollars for the purpose of building a new grade school and to repair and remodel present school buildings, the said improvements to be used for classrooms, shops, and other school purposes; the bonds to be due on January 1, in the amounts and years as follows:

Schedule

$22,000.00 on January 1, 1959, and January 1, 1960
$24,000.00 on January 1, 1961, through January 1, 1964
$25,000.00 on January 1, 1965, through January 1, 1967
$30,000.00 on January 1, 1968, through January 1, 1972
$32,000.00 on January 1, 1973, through January 1, 1977.

To bear interest at a rate of not to exceed 4.2% per annum."

The resolution then provided for the statutory notice of election to be given and set out the form of the notice and incorporated therein the last quoted language as one of the propositions to be voted on. The resolution also prescribed the form of the ballot to be used and as to proposition 2 the language in the body of the ballot was to be the same as above set out. In the

82

printing of the ballots, however, apparently by inadvertence the last line, i. e., "To bear interest at a rate of not to exceed 4.2% per annum" was omitted and the ballots used and cast in the election did not contain this phrase. Intervenors contend initially, that payment of plaintiff's fees under his contract with the school district requires passage of a valid bond referendum and that failure of the ballot to specify the interest rate which the bonds would carry was a fatal defect which rendered the election on proposition 2 invalid.

The forms of the notice and the form of the ballot to be used in submitting public measures to vote in elections of this kind, are prescribed by Sections 5A—10 and 5A—13 of the School Code [Ill. Rev. Stats. 1957, ch. 122]. As to the notice, Section 5A—10 provides:

"Whenever a question of public policy is submitted to be voted upon by the people within the district, the notice of such election shall contain the substance of the proposition to be voted upon."

and as to the ballot. Section 5A—13 provides:

"Whenever a public measure is submitted to be voted upon, the substance of such public measure shall be clearly indicated on the ballot . . ."

Both sections are silent as to what shall be included in the "substance of the proposition."

The prior acts throw light on the question here involved. Section 5A—10 was added to the School Code in 1951 by Act approved June 9, 1951, Laws 1951, page 265. This section was added in lieu of Sec. 19—4 which was repealed. 1951, June 21 Laws 1951, p. 420, par. 2. Section 19—4 of the School Code specifically required that the interest rate be set forth in the notice of the election. Thus a board of education was required to state in the election notice the exact inter-

83

est rate which bonds were to bear. No form of ballot was prescribed in the School Code prior to 1951 for use in submitting public measures, such as here involved, to vote. In such cases the courts adopted the rule that where a statute did not prescribe the form of the ballot to be used in a particular election Section 16—7 of the Election Code governed the form. People ex rel. Henry v. New York Central R. Lines, 381 Ill. 490, 45 N.E.2d 860. The revision of 1951 by the addition of Sections 5A—10 and 5A—13 to the School Code did two things. It eliminated the specific requirement that the interest rate which the bonds were to bear should be set forth in the notice of election and it for all practical purposes incorporated the provisions of Section 16—7 of the Election Code into the School Code as Section 5A—13 to prescribe the form of the ballots, thereby making it no longer necessary to revert to the Election Code to determine the form of the ballots.

 Where by amendment or revision, words are stricken from a statute it must be concluded that the Legislature deliberately intended to change the law. It will not be presumed that the difference between two statutes was due to oversight or inadvertence, but the presumption is that every amendment or revision is made to effect some purpose. I. L. P. Statutes Sec. 161; McLaughlin v. People, 403 Ill. 493, 87 N.E.2d 637. It must be considered that the Legislature was aware of the provisions of Section 19—3 of the School Code which granted the power to borrow money and issue bonds, with the proviso that said bonds should bear interest at not to exceed 6% per annum. By this section the interest rate could not in any event exceed 6% per annum. It could be less but not more. Thus a school district was bound to take notice of this proviso. Likewise the voters were bound to take notice of this proviso and were at the same time protected by the ceiling placed on the interest rate. In the case before

us the school district was not prone to take advantage of the full 6% ceiling on the interest rate. It took the initiative and lowered the ceiling to 4.2%. From a practical standpoint the elimination of the provision that the notice of election shall specifically prescribe the interest which the bonds shall bear, benefits the school district and residents thereof in two respects. First, it makes possible a certain amount of flexibility in fixing the interest rate which is very important in the sale of bonds in periods of rapid fluctuation of interest rates and second, it enables districts to take advantage of the practice of insisting on competitive interest rate bids, without limitation to a fixed interest rate. And this, with full knowledge on the part of the taxpayers as in the case before us that the interest rates cannot in any event exceed 4.2%. We therefore conclude that by the revision of 1951 the Legislature has eliminated the requirement that the interest rate which the bonds are to bear must be specified, and that the notice of election in the case before us was not required to state the interest rate that the bonds, proposed to be issued, should bear. If a definite interest rate was not required to be specified in the election notice, we are of the opinion that it reasonably follows that it was not required to be specified in the form of the ballot.

■ There is one corollary question to be considered. As heretofore noted the election notice contained the provision that the bonds were "To bear interest at a rate of not to exceed 4.2% per annum." The ballot omitted this phrase. This phrase is not the same as a phrase that the bonds are to bear interest at 4.2% per annum as would have been required prior to 1951. It connotes a ceiling, above which the interest rate cannot go. It plainly informs the voter of the maximum amount of interest the bonds will bear, and that it may be less. If the amount is less it inures to the benefit of

85

the taxpayers and they can in nowise be harmed. Having elected to incorporate the foregoing provision in the election notice, is its absence in the form of the ballot used fatal to the election? We think not. If Shires v. Irwin, 87 Ill. App. 111, the statute in force at that time, after providing for notice of the election, provided that "Such notice shall specify the place where such election is to be held, the time of opening and closing the polls and the question or proposition to be voted upon." The notice of election in specifying the propositions to be voted upon, was "for the purpose of voting 'for' or 'against' the proposition of changing the school-house site; and also for the purpose of voting 'for' or 'against' the proposition to issue a bond of said district No. 4, to the amount of four hundred dollars, for the *purpose of building a new school house,* (emphasis supplied) said bond to be paid one year from date of issue, with interest not to exceed seven per cent." It was first contended that the notice was not sufficiently specific as to the proposition to build a new school house. In rejecting this contention the court said:

"It must be admitted that the notices might have been drawn with more definiteness as to the proposition to build a school house, but yet, considering the notice as a whole, we are of the opinion it was sufficiently specific to enable the voters to know and understand what they were to vote upon. . . . What was this bond to be issued for? Clearly, to raise money to build a new school house as stated in the notice."

It was further urged that the ballot was defective. The ballot as used in connection with the issuance of the bond was as follows:

"For issuing a bond to the amount of 4 hundred dollars to be paid one year from date with interest not to exceed 7 per cent."

Thus it will be seen that the ballot omitted the phrase "for the purpose of building a new school house" as contained in the notice of election. In holding the ballot sufficient the court said:

"It is true the ballots cast do not specifically vote to build a new school house, *but when taken in connection with the notice* and the other propositions to be voted upon, can there be any doubt as to what the eighteen persons who voted in the majority intended by their votes? We think not. The district was without a school house. A proposition was before the people to change the school-house site and borrow the money to build a new school house.

"We have held the notice of the election for the purpose of submitting these propositions sufficient. In pursuance of such notice the election was held, at which eighteen out of the thirty-four votes cast were 'for the proposed school-house site N. W. Cor. S. W. quarter Section 29, house to be 20 rods south of the half section line. For borrowing $400 and issuing bond payable one year from date, interest not to exceed 7 per cent.'

"Certainly no more technical rules should be applied to such an election than any ordinary election, and if not, then the general rule must prevail that if the intention of the voter can be fairly ascertained from his ballot, though not in strict conformity to law, effect will be given to that intention. (McKinnon v. The People, 110 Ill. 305; Behrensmeyer v. Kreitz, 135 Ill. 591.)

"In the case last cited it was held that the ballot should be liberally construed and the intendments should be in favor of a reading and construction which will render the ballot effective, rather than in favor of a conclusion which will, on some technical ground, render it ineffective. There can be no doubt of the wisdom and justice of this doctrine, and applying it

87

to the ballots in question we can have no doubt as to the intention of those who cast the eighteen votes in the majority."

See also opinion filed by the Supreme Court on March 20, 1959, in Smith v. Calhoun Community Unit School Dist. No. 40 et al., Docket No. 35117.

The events which followed the foregoing election produce the second question involved in this appeal. Following the aforesaid election, the board of education of defendant district encountered difficulty in obtaining a legal opinion holding the election valid, due to the matters hereinbefore noted. Subsequently a second election was called on the theory that the proceedings in the first election could be validated if said election was defective. The identical propositions were submitted with the inclusion of the interest provision on the ballot. In the second election the propositions failed to carry. Intervenors contend that by the unfavorable vote in the second election on the identical propositions submitted to the voters in the December election, the voters rescinded any power or authority previously granted. In the same vein, they argue the School District abandoned the results of the first election and they are estopped to exercise the power granted.

The determination of that question revolves around the power of the School District to submit the same proposition to the voters once it has been approved, and the power of the voters to rescind the power and authority previously granted. A School District is a quasi municipal corporation, Chicago City Bank & Trust Co. v. Board of Education of Chicago, 386 Ill. 508, 54 N.E.2d 498, created by the General Assembly in carrying out the mandate of the Illinois Constitution, Article VIII, Section 1. It has no inherent powers and derives its existence and power wholly from the General Assembly, People ex rel. Dilks v.

88

Board of Education of Paxton Community High School Dist. No. 117, 283 Ill. App. 378, Melin v. Community Consol. School Dist. No. 76, 312 Ill. 376, 144 N. E. 13, and is limited to those powers expressly granted or such as result from necessary implication from those granted. The right to rescind the results of a previous election conducted under the School Code must rest upon some power granted by the legislature or necessarily implied. We find no provision in the School Code governing this election, expressly giving the right to rescind. We are of the opinion that it does not arise by implication. The power to vote on a proposition to issue bonds implies the right to vote for or against the proposition but not the right to vote to rescind authority once granted.

In 64 C. J. S., par. 1929C, page 552, it is said:

"The defeat of a proposition to issue bonds does not prevent a second submission of the proposition, whereas a proposition to issue bonds which has been adopted by the voters ordinarily cannot be resubmitted in the absence of statutory authority."

In People v. Town of Waynesville, 88 Ill. 469 at page 475, the Supreme Court held:

"As a general rule, where the General Assembly confers a power, and the persons upon whom it is conferred act under it, the power is exhausted unless power is given to act again under the same authority. It is true that an election to change the terms of a prior vote is not in terms prohibited by the charter, but when it is remembered that it is only by virtue of an express power conferred by the General Assembly that these municipal bodies can vote for these subscriptions, we would rather look for an express power to vote to make the change, than to find it expressly prohibited. And if the second vote of the people to change the conditions previously annexed was without legislative sanction, then this election was *ultra vires,* and such act would be void."

This rule thus expressed found approval in other jurisdictions. Schmiedeskamp v. Board of Trustees of School Dist. No. 24, Yellowstone County, 278 P.2d 584 (Montana), Orr v. Marrs, 47 S.W.2d 440 (Texas), People v. Board of Trustees of Village of Bellport, 196 N. Y. S. 459, 119 Misc. 357 (New York).

While it is true, as appellants contend, the cited cases vary in facts from the case at bar, the law as set forth in People v. Town of Waynesville, supra, is controlling. Counsel for intervenors cite Denicore v. City of Burlington, 116 Vermont 138, 70 A.2d 582, and Hibbs v. Board of Direction and Secretary of District Township of Adams, Mahaska County, 110 Iowa 306, 81 N. W. 584, as authority for the principle that having power to vote the issuance of bonds, the voters have the right, by necessary implication, to rescind that vote. Whatever is said in these cases is contrary to the rule announced in People v. Town of Waynesville, supra. Also, in these cases the rule announced is qualified by the opinions, to instances where the rights of third parties have not intervened. In the case at bar it can well be said that the rights of a third party have intervened because, upon passage of bond issue proposition, plaintiff was, by the terms of a binding contract, entitled to be paid his preliminary fee. From the foregoing we conclude that the second election was a nullity.

By the declaratory judgment, the trial court declared the election of December 15, 1956, to be valid and legal and the second election to be a nullity. It further declared that the defendant School District was obligated to plaintiff under the contract for architectural services performed. We find no error in this judgment and accordingly it is affirmed.

Judgment affirmed.

REYNOLDS and CARROLL, JJ., concur.