STEPHEN STEINMETZ, Plaintiff-Appellant, *v.* BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 529 *et al.*, Defendants-Appellees.

Fifth District   No. 77-505

Opinion filed December 22, 1978.—Rehearing denied January 24, 1979.

G. MORAN, P. J., dissenting.

H. Carroll Bayler, of Louisville, for appellant.

Laurence L. Arnold, of Olney, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:
Plaintiff, Stephen Steinmetz, filed a petition for a writ of mandamus against defendants, Board of Trustees of Community College District No. 529 and James S. Spencer, chancellor, seeking reinstatement as a teacher with the District. Defendants filed a motion for summary judgment which was granted. Plaintiff then brought this appeal.

Plaintiff contends that the granting of summary judgment was erroneous in that genuine issues of material fact existed which would have

been appropriate to decide only on the basis of sworn evidence upon a trial of the cause. Additionally, plaintiff argues that he was denied due process of law.

The factual situation presented was as follows. Plaintiff was an instructor of speech at the Olney campus of defendant Community College District No. 529. There are three campuses in operation in the District. Although plaintiff taught only speech classes, an "employment data sheet," filled out at the time plaintiff was hired, and signed by the chancellor, stated that plaintiff was qualified to teach speech and English. Plaintiff entered on continual contractual service (tenure) on April 30, 1973. The Board policy in effect at that time provided that "separation from service shall be for just cause as recommended by the Chancellor and approved by the Board of Trustees." On February 19, 1976, plaintiff received a copy of a letter from the president of Olney Central College to the chancellor of the District stating that he recommended that plaintiff's contract be terminated at the end of the academic year for reasons of retrenchment made necessary by a decline in enrollment in speech classes.

Plaintiff requested a conference with the chancellor on March 5, 1976, and was told that the chancellor would meet with him on March 8, 1976. Also on March 5, the president of Olney Central issued a communication that the recommendation to terminate plaintiff's contract would be presented for Board approval on March 16, 1976. At approximately 4:30 p.m. on March 22, 1976, plaintiff was notified in writing that an adjourned meeting of the Board of Trustees would be held the following day, March 23, at 7:30 p.m. at which time the recommendation in question would be presented to the Board. Plaintiff was present at this meeting with his attorney. Counsel for the defendant District was also present. Immediately following other business, including the approval of a resolution to name a gymnasium at the Wabash Valley College campus of the District in honor of the chancellor, the recommendation to terminate plaintiff's contract was presented by the chancellor and approved by the Board.

Plaintiff then filed a petition for mandamus, seeking reinstatement. Defendants filed an answer to which plaintiff filed a reply. Defendants responded with a motion for summary judgment, accompanied by affidavits, attesting, *inter alia*, to a decrease in enrollment for speech classes. Plaintiff filed counteraffidavits attesting that there was an increase in speech students for the 1974-75 school year, rather than a decrease; that during the 1974-75 school year the defendants took classes away from the plaintiff and hired other personnel to teach classes he had been teaching; that said acts were not done in good faith as a necessary reduction in personnel but were done instead to circumvent the Board's provisions

concerning tenure. On July 6, 1977, the court granted summary judgment for defendants.

■■ Plaintiff is apparently contending that since the Board policy in effect at the time he entered continual contractual service did not specifically provide for dismissal of teachers for reasons of retrenchment the Board is therefore prohibited from dismissing him for that reason. Defendants reply that although the Board policy provisions on tenure did not specify retrenchment as a reason for dismissal at the time plaintiff became tenured, the Board policy was changed to so specify during the time plaintiff was on tenured status. Plaintiff challenges the effectiveness of the changed policy to affect his status. He alleges that a change in tenure policy which the Board adopted after he entered upon continual contractual service is in derogation of the constitutional prohibition against the impairment of contracts and is also prohibited as an *ex post facto* law. Plaintiff cites this court to no case law in support of his contention and presents no argument beyond this bare assertion. However, we note that the constitutional prohibition against *ex post facto* laws concerns criminal matters solely and has no application to civil law. *People ex rel. County Collector of Ogle County v. Chicago Burlington & Quincy Ry. Co.*, 323 Ill. 536, 154 N.E. 468.

■■ Community college districts operate under the authority of the Public Community College Act. (Ill. Rev. Stat. 1975, ch. 122, par. 101—1 *et seq.*) Section 3—32 of that Act empowers the Board "to establish tenure policies for the employment of teachers and administrative personnel, and cause for removal." Under the authority of the Act the Board adopted the following policy statement:

> "In addition, another reason for discharge is retrenchment, which means the decrease in number of persons employed by the Board of Trustees as a result of its decision to reduce staff or the discontinuance of some particular type of teaching service."

We perceive no irregularity in the passage or the content of this policy nor in its application to plaintiff.

■■ Additionally, defendants argue that the power to dismiss for retrenchment is inherent. Plaintiff replies that the Board possesses statutorily granted powers only and has no inherent powers, quoting from *Goedde v. Community Unit School District No. 7*, 21 Ill. App. 2d 79, 157 N.E.2d 266, to the effect that "a school district has no inherent powers and derives its existence and power wholly from the General Assembly and is limited to those powers expressly granted or such as result from necessary implication from those granted." We note that *Goedde* involved a public secondary school and the Illinois School Code, which is inapplicable here, although it might be argued that the situations are analogous. However, this citation does not avail the plaintiff since we are of the opinion that the

power to dismiss for reasons of retrenchment is one which is necessarily implied from those powers granted to the Board. This argument becomes even more compelling when section 3—30 of the Community College Act is read. It provides:

"The board of any community college district has the powers enumerated in Sections 3—31 through 3—43. This enumeration of powers is not exclusive but the board may exercise all other powers, not inconsistent with this Act, that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." (Ill. Rev. Stat. 1975, ch. 122, par. 103—30.)

The intention of the General Assembly to grant broad powers with sufficient flexibility to meet contingencies as they might arise, including that of the need to reduce staff because of falling enrollments, is evident from this language. We are also guided in this decision by the reasoning of courts from other jurisdictions which have dealt with this specific problem or others similar to it. *Funston v. District School Board* (1929), 130 Ore. 82, 278 P. 1075; *People ex rel. Corrigan v. Mayor & Common Council* (1896), 149 N.Y. 215, 43 N.E. 554; *Ehret v. School District* (1939), 333 Pa. 518, 5 A.2d 188; and *Miller v. Stoudnour* (1942), 148 Pa. Super. 567, 26 A.2d 113, all found that, as was aptly expressed by the *Funston* court, tenure provisions were not intended to "provide teachers, situated like the plaintiff, with a life income conditioned only upon their proper conduct." (130 Ore. 82, 85, 278 P. 1075, 1076.) This issue is one determinable as a matter of law. It was therefore appropriately decided on a motion for summary judgment. *Lesser v. Village of Mundelein*, 36 Ill. App. 3d 433, 344 N.E.2d 29.

Plaintiff's next argument alleges that even if he was properly dismissed for retrenchment, the Board was required to dismiss a nontenured teacher, who was, he asserts, teaching subjects he was qualified to teach before his contract could legitimately be terminated even though this teacher was teaching at a different campus than plaintiff. Again, we are cited to no case or statutory authority for this argument. Defendants contend that Board policy provides that "tenure status shall be granted and enjoyed with the campus at which the tenure was gained, not with the District." Plaintiff asserts that this provision was adopted after he became tenured and makes the same argument presented earlier concerning impairment of contracts and *ex post facto* laws.

■ The Community College Act authorized the Board to "establish tenure policies." This grant of authority is a very broad one. The Board has chosen under this authority not to grant a right of seniority or a right to "bump" nontenured teachers and has chosen to make tenure campus-wide, not district-wide. The Supreme Court has recognized that the term

"tenure" does not give any greater rights, either substantive or procedural, than the policy which defines the term. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) Also, the Illinois Supreme Court has recognized that public school teachers have limited tenure rights in that they are subject to expansion, limitation or deletion by the General Assembly. (*People v. Deatherage*, 401 Ill. 25, 81 N.E.2d 581.) The plaintiff's argument that defendants had no authority to direct that tenure be by campus rather than district is therefore unavailing.

Plaintiff next argues that there were genuine issues of material fact presented which made the granting of summary judgment inappropriate. He asserts that the affidavits filed by both parties in support of their motions placed in issue the question of whether there was, as alleged by defendants, a decrease of students enrolled in speech sufficient to sustain a policy of retrenchment, or, as alleged by plaintiff, an increase in speech students. Defendants filed an affidavit by the president of Olney Central College with attachments reflecting an analysis of the number of speech students enrolled at Olney Central College in the fall and winter quarters of 1975-76 which showed that speech enrollment had dropped to an average of 13.60 students per section in basic speech courses and 8.66 students per section in advanced speech; that the ideal was 30 students per section; that there were two speech instructors and if one were to be eliminated the average per section would still be only 23.5 students; and that there was no prospect of an increase in speech students. Plaintiff's affidavit alleged simply that there was an increase in speech students in the period of time in question; that classes had been taken away from him and given to others; and that the allegation of dismissal for reasons of retrenchment was a subterfuge. Plaintiff alleges that this exchange of affidavits creates a genuine issue of material fact which should have gone to a jury. Plaintiff ignores the rule of law that conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn will not avail to present a genuine issue of material fact sufficient to take the case to the trier of fact. (*Haas v. Mid-America Fire & Marine Insurance Co.*, 35 Ill. App. 3d 993, 343 N.E.2d 36; *Kniznik v. Quick*, 130 Ill. App. 2d 273, 264 N.E.2d 707; *Carruthers v. B. C. Christopher & Co.* 57 Ill. 2d 376, 313 N.E.2d 457.) The plaintiff's allegations are conclusory only and are not supported by allegations of evidentiary facts from which those conclusions may be drawn. His affidavit is therefore insufficient to raise a genuine issue of fact.

Plaintiff's next contention is that he was qualified to teach English as well as speech, that defendants were obligated to retain him as an instructor of English and that the question of his qualifications and the duty of defendants to retain him was placed in issue by the affidavits submitted.

An affidavit submitted by the president of Olney Central College avers that although it was thought at the time plaintiff was first employed that he was qualified to teach English as well as speech, that this determination was an error made by the administrative staff. The affidavit recited that plaintiff's undergraduate major was speech and his minor was English, and that he did not receive any graduate instruction in English. A copy of plaintiff's graduate and undergraduate transcripts was attached to the affidavit and bear out the allegations made therein.

Plaintiff's arguments on this point center around the allegation in the president's affidavit that the Board policy on standards for the evaluation and recognition of Illinois Community Colleges state that "as a general rule graduate work to the master's degree or beyond in the subject or field taught is expected except for such subjects or fields in which graduate programs are not normally available or in which work experience is the principal teaching medium." Plaintiff alleges that a later recommendation is now in effect which states that the District may offer "specialized courses in which the preparation for teaching may vary from typical advanced degree programs to other educational preparation and experience," which formulation was included in his counteraffidavit in support of his averment that he is qualified to teach English.

■■ These arguments seem to us irrelevant. The question may be resolved by reference to the argument addressed earlier concerning the broad powers granted to the Board by necessary implication. We can think of little else which would fall more clearly within the ambit of powers "requisite or proper for the maintenance, operation and development" of a college than the determination of what academic preparation is required of an instructor (Ill. Rev. Stat. 1975, ch. 122, par. 103—30).

Plaintiff attacks the affidavits filed by defendants in that they do not attach sworn or certified copies of the information which they purport to place before the court. However, the affidavit itself in each case refers to the attached copies and the affiant swears that the same is true and correct copy. This precaution is sufficient to meet the requirement of sworn copies.

■■ Plaintiff's last contention is that he was not accorded due process in that it was impossible for the Board to rule impartially upon the recommendation that his contract be terminated. He bases this allegation upon the fact that it was presented by the chancellor, the person for whom they had moments before voted to name a college gymnasium. Suffice it to say that we consider it unlikely that an elected board of trustees would consist of persons who could be so easily swayed. There is certainly no evidence or indication of it, nor is the circumstance one from which such suasion would arise. This conclusion applies with even more

force when the presumption of regularity of administrative actions is considered. *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456; *Hortonville Joint School District No. 1 v. Hortonville Educational Association* (1976), 426 U.S. 482, 49 L. Ed. 2d 1, 96 S. Ct. 2308.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

FRIEDMAN, J., concurs.

Mr. PRESIDING JUSTICE GEORGE J. MORAN, dissenting:

I disagree with that portion of the majority opinion which holds that Steinmetz was not entitled to District tenure. Steinmetz was a tenured teacher entitled to District tenure by reason of a resolution of the Junior College Board adopted January 16, 1968. On July 15, 1975, the Board adopted a new policy entitled "Campus Tenure." The plaintiff argues that having once acquired District tenure, he could not be deprived of his tenure retroactively by the adoption of a new policy which would entitle him to campus tenure only. If the new resolution changed his tenure, it stripped him of a vested contract right which the Community College Board had no power to do.

However, I do not think that the policy adopted on July 15, 1975, was intended to strip him of his vested tenure rights because I believe that policy was intended to operate only prospectively and was not intended to deprive anyone of District tenure who had acquired that right prior to July 15, 1975. Note that the third paragraph of the policy adopted July 15, 1975, commences thusly:

> "Faculty members earning tenure status herein will enjoy said tenure status with the campus at which the tenure was gained, not with the district."

This seems to me to be a recognition of the fact that faculty members who had already attained tenure status would not be affected by the new policy.

I also believe that there are disputed issues of fact in this case which should preclude an entry of a summary judgment for the defendant.