THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THERON HILL, Defendant-Appellant.

Fourth District    No. 17253

Opinion filed August 23, 1982.

MILLS, J., specially concurring.

Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's
Office, of Springfield, for appellant.

C. David Vogel, State's Attorney, of Pontiac (Robert J. Biderman and
Denise M. Paul, both of State's Attorneys Appellate Service Commission, of
counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the
court:

On October 21, 1980, defendant, Theron Hill, was charged in the
circuit court of Livingston County with the offense of conspiracy to
commit burglary. After a jury trial, a judgment of conviction was en-
tered on April 23, 1981, and he was subsequently sentenced to proba-
tion for 1 year and 206 days conditioned upon his serving 2 days of
imprisonment and paying a fine of $2,500. On appeal we need con-
sider only his contention that his guilt was not proved beyond a rea-
sonable doubt. We conclude the evidence was not sufficient and re-
verse.

Our decision turns upon whether section 8—2(a) and (b) of the
Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—2(a), (b)),
providing for the offense of conspiracy, encompasses the "unilateral"
theory of conspiracy or only the "bilateral" conspiracy. Section 8—2(a)

and (b) states:

"(a) Elements of the offense. A person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator.

(b) Co-conspirators.

It shall not be a defense to conspiracy that the person or persons with whom the accused is alleged to have conspired:

(1) Has not been prosecuted or convicted, or

(2) Has been convicted of a different offense, or

(3) Is not amenable to justice, or

(4) Has been acquitted, or

(5) Lacked the capacity to commit an offense."

The penal provisions of the statute are contained in section 8—2(c).

The "bilateral" theory of conspiracy is the traditional concept of the offense. Under that theory, in order for a conspiracy to exist, at least two people must intend to agree to the commission of an offense. The "unilateral" theory is of comparatively recent origin. Under it, the offense of conspiracy may occur when the accused, with intent to agree to the commission of an offense, enters into what appears to be an agreement with another to commit that offense, even though the other has no intention to agree to do so. We hold (1) section 8—2(a) and (b) requires an intent of at least two people to agree, and (2) the evidence here was insufficient for the jury to have concluded that anyone other than defendant intended to agree to the commission of a burglary as alleged.

The major push for the "unilateral" concept has arisen from section 5.03(1) of the Model Penal Code, which states:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he: (a) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." (ALI Model Penal Code sec. 5.03(1) (Tent. Draft No. 10, 1958).)

Section 5.04(1) (a) of the Model Code then provides that whether the person with whom the agreement is made "has a particular characteristic which is an element" of the offense of conspiracy is immaterial if

the accused believes he has that characteristic. (ALI Model Penal Code sec. 5.04(1) (Tent. Draft No. 10, 1958).) The comments to the foregoing explain that its drafters intended a departure from the traditional "bilateral" theory to one that focuses upon each individual's culpability. Thus, under this theory the intent of another party to agree to the commission of the principal offense is immaterial if the party to be charged has the intent to so agree. The culpability of the accused is not decreased or nullified if the intent to agree of the other party is only feigned.

The supreme courts of Ohio and Minnesota have held that the conspiracy provisions of their statutes on criminal law adopt the unilateral theory in *State v. Marian* (1980), 62 Ohio St. 2d 250, 405 N.E.2d 267, and *State v. St. Christopher* (1975), 305 Minn. 226, 232 N.W.2d 798, respectively. The Ohio statutory definition of conspiracy interpreted in *Marian* stated that a person committed the offense if he did " *** either of the following: '(1) With another person or persons, plan or aid in planning the commission of any [previously described] offense.' " (Ohio Rev. Code Ann. sec. 2923.01(A) (1982); 62 Ohio St. 2d 250, 251-52, 405 N.E.2d 267, 269.) The Minnesota statute interpreted in *St. Christopher* spoke of "[w]hoever conspires with another to commit a crime." (Minn. Stat. sec. 609.175(2) (1964).) Neither statute had a provision similar to section 504(1) (a) of the Model Code. A previous Ohio conspiracy statute had begun its definition of the offense by stating: "If two or more persons conspire together to commit any offense." (Ohio Rev. Code Ann. sec. 2901.34.) A former Minnesota statute had begun with the words "When two or more persons shall conspire." Minn. Stat. sec. 613.70 (1961).

Both the *Marian* and *St. Christopher* courts stated that one person with the criminal intent to agree to the commission of a crime does not furnish as great a danger to society as the existence of at least two people with that intent, but one such person does give rise to some substantial danger. The courts approved the theory of the Model Code and reasoned that the changes in their statutes from the reference to two or more persons doing certain things to a statement that a conspiracy arose when one agreed or planned with another to commit an offense indicated an intent to adopt the unilateral theory. The *Marian* court also noted that its legislature had made no provision for the offense of solicitation.

Section 8—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—2) is similar to the legislation interpreted in *Marian* and *St. Christopher* in that (1) it speaks of "[a] person" committing conspiracy when that person "agrees with another to the commission

of [an] offense," and (2) it replaced statutory language which was similar to the prior statutes in those cases, and spoke in terms of "If two or more persons shall conspire." (Ill. Rev. Stat. 1961, ch. 38, pars. 138 through 140.) Nevertheless, we are convinced the drafters of the Criminal Code did not intend to adopt the unilateral theory.

The Criminal Code was drafted by a joint committee appointed by the Illinois State and Chicago Bar Associations consisting of distinguished judges, prosecutors, attorneys, and college professors. The committee made a lengthy and thorough study of the substantive criminal law of the State. The comments of that committee concerning section 8—2 (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 458-60 (Smith- Hurd 1972)) state that the section changed the law of conspiracy by (1) abolishing common law conspiracy, (2) providing that an act in furtherance of the conspiracy must be alleged and proved, (3) eliminating the defenses that the person or persons with whom the accused is alleged to have conspired has been acquitted or lacked the capacity to commit an offense, (4) eliminating the "Wharton Rule" whereby conspiracy was not committed if the agreement was to commit an offense which required the conduct of more than one person, and (5) changing the penalty provision.

Citing *People v. Bryant* (1951), 409 Ill. 467, 100 N.E.2d 598, the Committee Comments note, "theoretically, there must be at least two guilty parties to a conspiracy." (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 459 (Smith-Hurd 1972).) The comments then say that rationale was rejected to the extent of the changes brought about by section 8—2(b) (4) and (5) which do away with the defenses of acquittal or lack of capacity to commit an offense of the person or persons with whom the agreement to commit an offense was made. Nothing in the comments indicates that the failure of another person or persons to intend to agree to commit an offense would be a lack of capacity. The comments indicate the rationale of subsections (4) and (5) is that neither the contingencies or vagaries of other trials nor the legal incapacity of persons with whom an agreement is made should prevent the conviction of an accused if the accused is given a fair trial. We do not interpret this discussion to indicate any intention to abandon the requirement that at least two people must intend to agree to the commission of a crime in order for a conspiracy to exist.

Both by the language of section 8—2 and by the language of the Comments, the drafters set forth in detail the changes intended to be brought about in the law of conspiracy. The Comments indicate the drafters were aware of the existence of Tentative Draft No. 10 of the Model Penal Code. For them to have intended to also change from

the traditional "bilateral" theory of conspiracy to the "unilateral" theory without making a specific mention of that intent in either document is inconceivable. We interpret section 8—2 to require an intention to agree on behalf of at least two people.

Our conclusion as to the intent of the legislature is strengthened by the existence in section 8—1(a) of the Criminal Code of 1961 of a provision for the offense of solicitation stated as follows:

"(a) Elements of the offense.

A person commits solicitation when, with intent that an offense be committed, he commands, *encourages* or *requests* another to commit that offense." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 8—1(a).)

The punishment for solicitation is reasonably similar to that for conspiracy. In most cases where conspiracy occurs under the unilateral theory, a solicitation would also take place. As we subsequently explain, the evidence here would have supported a conviction of solicitation. With the existence of the offense of solicitation with substantial punishment available upon conviction, the need for the legislature to have provided for a unilateral conspiracy was much less here than in *Marian*, where the State criminal statutes made no provision for such an offense.

Our determination that section 8—2 retains the bilateral approach to conspiracy is based entirely on our interpretation of legislative intent. Our holding is consistent with dictum in *People v. Ambrose* (1975), 28 Ill. App. 3d 627, 329 N.E.2d 11, the only opinion of a court of review of this State which speaks on this aspect of section 8—2. We express no opinion as to whether the "unilateral approach" or the "bilateral" one is the sounder policy.

We now turn to the fairly simple facts of the issue before us in this case. The State's key witness, Robert Bruce, was an inmate at Pontiac Correctional Center where defendant was a guard. Bruce testified that on August 5, 1980, while he was still incarcerated, he had a conversation with defendant in which, at defendant's suggestion, they discussed the possible burglaries of sporting goods stores. Bruce testified defendant told him he, Bruce, would get some money for his efforts. Although Bruce testified to asking to see some plans of a sporting goods store under consideration, he did not testify that he then agreed to participate in any burglary. The tenor of his testimony was that he was merely considering the possibility of doing so. On cross-examination by the defense, Bruce emphatically stated he never had the intention to agree to committing a burglary. The evidence was undisputed that the next day a State's investigator contacted Bruce in

the prison concerning the possibility of riots breaking out there, and Bruce then told the investigators of his conversation with defendant on the previous day. The evidence was strong that thereafter defendant feigned agreement with plans to burglarize a sporting goods store in conjunction with defendant. Defendant testified contrary to Bruce, asserting that Bruce approached him suggesting a burglary, but he did not agree to the proposal.

The State relies on the "unilateral" theory but also claims that the evidence was sufficient for the jury to have determined beyond a reasonable doubt that, for one day, Bruce did intend to agree to commission of a burglary. We disagree. Nothing Bruce testified to indicated he was doing more than considering agreement to commit the offense. On cross-examination he denied such intent. Defendant gave such a different version of the occurrence of August 5, 1980, than did Bruce, that the jury could not have believed defendant's version that Bruce solicited him, thus indicating Bruce's intent to agree, and have rejected defendant's claim he did not agree to committing the burglary. The evidence was so lacking that Bruce, even for a day, intentionally agreed to the offense that a reasonable jury could not have so found.

As we previously mentioned, the evidence was sufficient to prove beyond a reasonable doubt that, with intent a burglary be committed, defendant requested Bruce to commit a burglary thus making defendant guilty of solicitation. Proof beyond a reasonable doubt of his guilt of conspiracy was not made.

Accordingly, we need not discuss defendant's other citations of error. We reverse.

Reversed.

WEBBER, J., concurs.

JUSTICE MILLS, specially concurring:

I concur in the result reached by the majority because no agreement was proved. Bruce never represented to the defendant that he would commit the burglary.

However, I do not agree that the drafters of section 8—2 intended to retain the bilateral approach to conspiracy.

As my able colleagues note in the majority opinion, the drafters were aware of the existence of the Model Penal Code. In the Committee Comments, attention is directed to the "comprehensive and exhaustive review of the law on all three [inchoate] offenses in Model

Penal Code comments and appendices \*\*\*." (Ill. Ann. Stat., ch. 38, pars. 8–1 through 8–6, Committee Comments, at 454 (Smith-Hurd 1972).) Throughout the Committee Comments to section 8–2, comparisons with, and contrasts to, the Model Penal Code conspiracy statute are noted. Ill. Ann. Stat., ch. 38, par. 8–2, Committee Comments, at 458-60 (Smith-Hurd 1972).

It is especially significant that the drafters were knowledgeable of the Model Penal Code. In the notes to section 5.03 of the Model Penal Code, it is stated:

> "*Unilateral Approach of the Draft.*
> The definition of the Draft departs from the traditional view of conspiracy as an entirely bilateral or multilateral relationship, the view inherent in the standard formulation cast in terms of 'two or more persons' agreeing or combining to commit a crime. Attention is directed instead to each individual's culpability by framing the definition in terms of the conduct which suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part—an approach which in this comment we have designated 'unilateral.' " (ALI Model Penal Code, at 104 (Tent. Draft No. 10, 1958).)

Prior to the Criminal Code of 1961, Illinois conspiracy statutes were phrased in terms of "two or more persons." (See Ill. Rev. Stat. 1961, ch. 38, pars. 138 through 140.) According to the Model Penal Code notes, the bilateral theory was inherent in this language. And, in fact, the Illinois courts applied a bilateral approach to the conspiracy statutes.

If the drafters of the Criminal Code of 1961 intended to retain the bilateral theory, they most certainly would have retained the language "two or more persons." Yet, not only did the drafters reject this language, they drafted the conspiracy statute in the form of the Model Penal Code by defining conspiracy in terms of the conduct which suffices to establish the liability of a "person." As was stated in *Goedde v. Community Unit School District No. 7* (1959), 21 Ill. App. 2d 79, 84, 157 N.E.2d 266, 269: "Where by amendment or revision, words are stricken from a statute it must be concluded that the Legislature deliberately intended to change the law. It will not be presumed that the difference between two statutes was due to oversight or inadvertence, but the presumption is that every amendment or revision is made to effect some purpose."

The basis of the decisions in *State v. Marian* (1980), 62 Ohio St. 2d 250, 405 N.E.2d 267, and *State v. St. Christopher* (1975), 305

Minn. 226, 232 N.W.2d 798, in which the courts adopted the unilateral theory, was that the legislatures changed the statutory language from requiring that two or more persons conspire to requiring that one person planned with another.

I do not find persuasive the argument that, had the drafters intended to adopt the unilateral theory, they would have said so in the Committee Comments. In the 60 pages of text and footnotes in the notes to the Model Penal Code conspiracy statute, little more than two pages were directed to the bilateral versus unilateral issue. (ALI Model Penal Code, at 104-06 (Tent. Draft No. 10, 1968).) I suggest that it is a fair inference that the drafters of the Illinois conspiracy statute found that the issue did not warrant discussion in their three pages of notes. This is especially so since—by rejecting the "two or more" language—the drafters gave a clear signal to the court to adopt the *unilateral* theory.

Clearly, a reviewing court is not required to reject an innovative change in the law merely because a legislative committee has not expressly directed us to adopt it.