Butler vs. The Regents of the University.

---

BUTLER VS. THE REGENTS OF THE UNIVERSITY.

STATE UNIVERSITY: (1) *Professor in, not a public officer.* (2–4) *Employment of proffessors in; duration of contract.* (5) *The case stated; no waiver of claim for services.*

RECEIPT: (6) *When not conclusive, though purporting to be in full.*

ERROR: (7) *When not fatal.*

1. A professor in the state university is not a "public officer" in such a sense as prevents his employment as such creating a contract relation between himself and the board of regents.

2. The employment of plaintiff as a professor in the university, in July, 1860 (in the absence of any limitation by resolution of the board or otherwise), was an employment for an indefinite time; and was not terminated until notice to that effect given by one of the parties.

Butler vs. The Regents of the University.

3. When the former board of regents was superseded by the board provided for by ch. 114, Laws of 1866, all contracts made by the former board and then in force were preserved and made binding upon the new board by the terms of said act; and plaintiff continued to hold under his previous contract until notified by the new board of his discharge.

4. It is not necessary, therefore, to determine in this case whether the act of 1866 effected a *dissolution* of the old *corporation*, and created a new one of the same name.

5. The new board of regents (organized in June, 1866), met October 2, 1866, and resolved that it considered " the payments made to the late faculty of the university up to July 1, 1866, as in full for services as professors, and that, until the election of a faculty, no further salaries can [could] be paid." No action had previously been taken to terminate plaintiff's employment. On the next day the board adopted a plan for the reorganization of the university, and elected plaintiff a professor therein. It also resolved, (1) that the collegiate term should commence on the 1st day of July, and end on the 30th day of June; and (2) that the salaries of professors elected for the then present collegiate year should commence on the 1st day of October, 1866, and close on the 30th day of June, 1867, at the rate of $2,000 per annum. The plaintiff accepted the position to which he was elected, after being notified of this action. *Held*, that there was nothing in such acceptance constituting a *waiver* of his claim already accrued for salary to October 1, 1866, under his former appointment.

6. On the 30th of June, 1867, plaintiff, on receiving his salary for the quarter ending on that day, signed a receipt therefor, which declares that the same is " for salary *in full* as professor " *to that date.* In an action to recover his salary for the quarter ending October 1, 1866, *held*, that he is not bound by such receipt, if he signed it without knowledge that it contained the words above recited, and supposing it to be merely a receipt for three months' salary.

7. Plaintiff being entitled to recover upon the undisputed facts, unless concluded by said receipt, and the question of fact in reference to it having been fairly submitted to the jury, errors in the instructions in other respects (if any occurred) are immaterial.

APPEAL from the Circuit Court for *Dane* County.

Action by the plaintiff to recover his salary as a professor in the state university from July 1 to October 1, 1866. The following are the material facts: On the 29th of July, 1858, the board of regents of the university appointed the plaintiff pro-

fessor of ancient languages and literature in that institution. He commenced service under such appointment on the fourth Wenesday in September following, at which date his salary commenced. On the 29th day of July, 1859, the board of regents ordained, "That the term of office of all professors and tutors, *now connected with the university*, shall expire at the time of the semi–annual meeting of the regents in July, 1860." June 27, 1860, the board extended those terms until an adjourned meeting thereof held July 11, 1860, on which day the plaintiff was re-appointed to such professorship, and his salary fixed at one thousand dollars per annum, besides certain fees. No further action appears to have been taken by the board of regents concerning the plaintiff's salary or term of employment, until October 2, 1866, until which time the plaintiff continued in the discharge of the duties of his professorship, and received his salary regularly up to July 1st in that year.

In June, 1866, a new board of regents of the university was duly organized pursuant to the provisions of ch. 114, Laws of 1866, which board, at a meeting thereof held October 2d in the same year, adopted the following resolution in response to a petition by the plaintiff for an adjustment of his salary for the first year of his services: "Resolved, that this board consider the payment made to the late faculty of the university up to July 1, 1866, as in full for services as professors, and that, until the election of a faculty, no further salaries can be paid." The adoption of this resolution is the first action taken by the board of regents in relation to the termination of the plaintiff's employment.

On the following day, October 3d, the board adopted a plan for the reorganization of the university, and elected the plaintiff professor of ancient languages. It also adopted the following resolution: "*Resolved*, 1st. That the collegiate year shall commence on the first day of July, and end on the 30th day of June. 2d. That the salaries of professors elected for the present collegiate year shall commence on the first day of October,

1866, and close on the 30th day of June, 1867, at the rate of $2,000 per annum, payable quarterly." The plaintiff was immediately notified of his election, and of the above action of the board in respect to salary and duration of term, and accepted the position.

The defendants read in evidence certain records from the proper state office, showing that on the 30th of June, 1867, the plaintiff receipted to the state "for salary in full as professor" to that date. But he testified on the trial, that when he signed the receipt he did not know that it contained the words above quoted, but supposed he was only receipting for three months salary, and did not learn to the contrary until about four years after the receipt was given.

The defendants interposed a counterclaim for $100, which was not controverted. The instructions given, and the proposed instructions refused by the court, so far as it is necessary to state them, will be found in the opinion of the court.

The plaintiff had a verdict for the amount of his demand, less the counterclaim, upon which verdict judgment was duly entered in his favor; and the defendants appealed.

*William F. Vilas*, for appellants, argued, that a professor in the university is not the hired servant of the board of regents, but a public officer, the position having all the characteristics of an office in distinction from a private or personal employment. Hence his right to receive pay, just as his right to hold the chair, is derived, not from contract with the regents, but from the fact that the pay is the legal emolument of the office and a part of the estate of the officer holding it. While he lawfully holds the office, he may, therefore, assert his right to compensation in a proper proceeding at law, the right being dependent on the existence of the office itself. As the office may be summarily discontinued by a legislative act, so may the officer himself be thereby at once unseated, both being dependent on the wisdom of the legislature. "An office is a right to exercise a public function or employment, and to take

the fees and emoluments belonging to it." 2 Bouv. Law Dic., tit. "Office"; 2 Black. Com., 36. So Webster defines it as "a special duty, trust, or charge, conferred by authority and for a public purpose; an employment undertaken by the commission and authority of the government." Webster's Dic., tit. "Office," 2. The university is a public institution, a chief part of the general educational system of the state, and the regents are a public corporation for its government. Its funds are of public bounty, wholly the property of and managed by the state, and subject to legislative control. The Enabling Act, app. Aug. 6, 1846; 1 Tay. Stats., 83. This grant was accepted by the state. Cons., art. II., sec. 2; 1 Tay. Stats., 102. The university is not a corporate body, but a public institution, whose government is entrusted to a public corporation, consisting of members elected by the legislature. The legislature has, by numerous acts, from time to time asserted its control over the institution. It possesses every element distinguishing such an institution from a private eleemosynary charity. See *Dartmouth College v. Woodward*, 4 Wheat., 518, opinion of MARSHALL, C. J., pp. 629, 630; *Trustees of the University of Alabama v. Winston*, 5 Stew. & P., 17. Three several corporations have been established, not as composing the university, but for its government. The first was created by the territory, and called a "Board of Visitors." Laws of 1838, ch. 99. The second was created by the state, and called a "Board of Regents." R. S. 1849, ch. 18. The latter was dissolved, and a third corporation was created by ch. 114, Laws of 1866. In each of these acts the professors, as well as the president or chancellor, are denominated officers, and similar delegations of power to establish such offices and appoint the incumbents were made to each of the three corporations. These acts delegate to each of the corporate bodies created for the government of the university, the power to enact laws for that purpose, to establish offices and define their respective duties, to fix the term or duration and the salary annexed to each office, and to

elect and remove the officers. In doing this, the regents act as public authorities governing a public charity; the officers (so designated by law) whom they elect, perform duties prescribed by law, and become entitled to receive from the state treasury the salary fixed by law, at, and only at, the regular periods fixed by law. This salary is variable at the pleasure of the public authorities, like the salary of any other public officer. Do not the professors "exercise a public function or employment," and is not their right to pay only "to take the fees and emoluments belonging to it?" The professors of the great universities of England, and fellows of their several colleges, although they had their origin in private benefactions, have been universally treated by the courts there as *officers*. Many differences exist, it is true, between those great aggregations of colleges and this university, but there is, in respect to this matter, much similitude. See *The King v. The Chancellor, etc., of the University of Cambridge*, 1 Stra., 557; *The King v. Bishop of Ely*, 2 Term, 290; *Rex v. Ballivos de Morpeth*, 1 Stra., 58. It is presumed that this court, should a proper case arise, would also make use of the writ of *mandamus* upon similar principles for the relief of a professor of this university. See Ang. & Ames on Corp., § 702 et seq; *Bracken v. The Visitors of Wm. and Mary College*, 3 Call, 573.

The effect of the act of 1866 was to destroy the department to which the plaintiff's chair belonged, and with it the plaintiff's professorship. *Bracken v. The Visitors of William and Mary College*, 1 Call, 161. The college officers were legislated out of office by the destruction of their offices. After 1860, plaintiff was not re-elected, but simply held his office from year to year under the former regents. But their dissolution by an act of which he was bound to know, was notice to him that his tenure ceased. He had no title to the office which gave him a right to the salary, against the new board, without their recognition of him as an officer. If plaintiff be regarded as an employee, the case is the same. His implied contract must have been

with the old regents, and their dissolution, known to him, was notice of its termination. He did not become the servant of the new body without at least some acquiescence on their part.

*P. L. Spooner* and *S. U. Pinney*, for respondent, argued that the language of the act of 1866, providing that "all contracts legally made, and at that time binding upon the board thus dissolved, shall be assumed and discharged by their successors," was conclusive upon the question of whether the plaintiff was legislated out of his position. As a matter of law, the contracts then binding the corporation, whether executed or executory, were to be assumed and carried out by the new board; and in discharging their governing functions, they are to observe and fulfill the rights and obligations growing out of such contracts; and *mandamus* would probably lie to enforce the rights thus secured. No action was taken terminating the plaintiff's employment, until after he had served the entire quarter for which he claimed compensation, and so far from the statute in question terminating his engagement, it preserved and continued it until it should be discharged by the new board. Even an entire change in the persons, or a change in the number constituting the governing body, would not terminate the plaintiff's relations to the university, whether his employment be regarded as an office or as a matter resting entirely in contract, since the proviso in section 6 (act of 1866) was designed to.prevent such a result. By whatever name' such professors may be called, the idea of compensation for the employment is at the foundation of the matter, as much as if a bank or an insurance company employed an attorney at a fixed compensation, so long as his services might be required. And the uncertain duration of the period of service throws no light upon the question, except as showing that the employment and right to pay would continue until terminated by the action of the board, communicated to the other party. The resolutions under which plaintiff was employed, October 3, 1866, and which, in connection with his acceptance of that employment, are relied

upon as constituting an accord, and, with payment for such subsequent services, a satisfaction of his demand, were not intended to be retrospective, and can not be fairly so contrued, since, upon their face, they refer only to future management. The receipt of a sum really due on one distinct transaction or employment, though purporting to be in full of all demands, is no bar to a recovery of another sum in dispute, and claimed upon an entirely different employment or transaction. There would be no consideration for such an agreement, and it would be destitute of every element, either of accord and satisfaction, or of estoppel. *Ryan v. Ward*, 48 N. Y., 204 ; *Otto v. Klauber*, 23 Wis., 471.

LYON, J. The learned counsel for the defendants has argued with great ingenuity that the plaintiff was a public officer, and not a mere servant or employee of the board of regents by whom he was appointed a professor in the university ; that the act of 1866 (ch. 114) abolished the old corporation known as "the regents of the university of Wisconsin," and established in its stead a new and different corporation designated by the same name ; and that the plaintiff's term of office as a professor necessarily terminated with the life of the corporation which elected him. We are unable to agree with the counsel on his first proposition. We do not think that a professor in the university is a public officer in any sense that excludes the existence of a contract relation between himself and the board of regents that employed him, in respect to such employment. It seems to us that he stands in the same relation to the board that a teacher in a public school occupies with respect to the school district by which such teacher is employed ; and that is purely a contract relation. If this view is correct (and we must hold it to be so), it is quite immaterial whether the corporate body which employed the plaintiff, was, or was not, dissolved or abolished by the act of 1866, because that act expressly provides that all contracts made by the old

board of regents shall be assumed and discharged by the new board. (Sec. 6.)

The first employment of the plaintiff in 1858 was terminated in July, 1860, by the action of the board in July, 1859. But that action applied only to the employment of 1858, so far as it affected the plaintiff, and did not fix or limit the terms of professors thereafter employed. No other action having been taken on the subject, the employment of the plaintiff as a professor in July, 1860, was for an indefinite time, and could only be terminated by notice given by either party to the other that he or they elected to terminate the contract, and then only from the time of giving such notice. No such notice was given by the regents until after October 1st, 1866.

The plaintiff is therefore entitled to recover the unpaid salary for the quarter ending October 1, 1866, less the admitted counterclaim, unless such right is defeated by the resolution of October 3, 1866, by which the plaintiff is bound, having accepted employment under it, or unless he is concluded by the receipt of June 30, 1867, which is in form a receipt in full for his services as professor to that date. While the plaintiff cannot, under the resolution of October 3d, recover the increased salary given by the new contract, we find nothing in the resolution which at all affects his right to recover his salary for that quarter under the contract and employment of 1860. The substance of the whole matter seems to be, that the plaintiff had earned $250 under the old contract, when the board of regents put an end to that contract and made a new one with him, by which they agreed to pay him $1,500 for his services during the balance of the collegiate year.

The court refused several instructions asked by counsel for the defendants, and gave several instructions, all relating to the foregoing propositions. But in my opinion all these instructions are quite immaterial. I think that the undisputed facts in the case show that the plaintiff is entitled to recover unless he is defeated by the receipt of June 30, 1867, and that the

only question of fact for the jury was, whether that receipt was given under circumstances which make it conclusive against the plaintiff. The substance of several instructions given to the jury relative to this receipt, is contained in the *third* instruction, which is as follows:

"If, at the time the plaintiff signed the receipt in evidence, he supposed and understood it to relate only to his salary due under the employment of October 3, 1866, and that it had nothing to do with his claim for his previous services under his employment by the old board of regents, and if he was not aware that it contained the words 'in full for his services as professor to date,' then the receipt is no bar to the recovery of the amount claimed in this action."

We think that this is a fair and correct statement of the law on the subject. In the view we have taken of this case, it is unnecessary to state more fully the instructions which the learned circuit judge gave, or refused to give to the jury. We find no material error in the instructions given, or in the refusal to give those which were refused, of which the defendant can justly complain. The judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.