GRANEY, and others, Plaintiffs-Appellants, v. BOARD OF REGENTS OF UNIVERSITY OF WISCONSIN SYSTEM, and others, Defendants-Respondents.†

Court of Appeals

*No. 79–202. Argued July 26, 1979.—Decided October 8, 1979.* (Also reported in 286 N.W.2d 138.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

746

For the plaintiffs-appellants there were briefs by *Bruce M. Davey* and *Lawton & Cates* of Madison, and oral argument by *Bruce M. Davey.*

For the defendants-respondents there was a brief by *Bronson C. La Follette,* attorney general and *Leroy L. Dalton,* assistant attorney general, and oral argument by *Leroy L. Dalton,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   Plaintiffs appeal from an order of the Dane County Circuit Court entered December 6, 1978, granting defendants' motion for summary judgment. The court's order dismissed plaintiffs' action seeking damages and declaratory and injunctive relief for seventeen University of Wisconsin System tenured faculty members laid off or terminated by the defendants.

The plaintiffs were tenured members of the University of Wisconsin System under sec. 37.31, Stats. (1971). In the spring of 1973, the Board of Regents determined that several campuses of the University of Wisconsin System were experiencing a financial exigency which

required a layoff of several tenured faculty members throughout the system. In a letter dated April 4, 1973, the president of the university directed each chancellor at the state campuses to select tenured faculty members for layoff effective June, 1974. A letter of May 14, 1973, sent to each chancellor explained that these actions would be considered layoffs rather than terminations, so that the tenured faculty members could retain their tenure status and employment benefits if they were rehired. About May 15, 1973, each of the plaintiffs received notification that he or she would be laid off as of June 30, 1974, due to financial exigency existing at their campuses. The Board of Regents adopted a review procedure in which the plaintiffs' layoffs were reconsidered by a committee consisting of other faculty members. Although the reconsideration committees at each state campus, with the exception of UW-Platteville, voted to rescind the layoff decisions, the chancellors reinstated the layoffs and the Board of Regents affirmed the chancellors' decisions.

Plaintiffs moved for a preliminary injunction in federal district court, alleging deprivation of their tenure rights in violation of their rights of due process and free speech protected by the first and fourteenth amendment of the United States Constitution. The preliminary injunction was denied, and the Seventh Circuit Court of Appeals affirmed the district court decision. *Johnson v. Bd. of Regents,* 377 F. Supp. 227 (W.D. 1974) Aff'd. 510 F.2d 975 (7th Cir. 1975). Plaintiffs brought this action in April, 1976.

Plaintiffs assert six causes of action: (1) that sec. 37.31, Stats. (1971) [1] creates a contract between the state

---

[1] Section 37.31, Stats. (1971), states in relevant part:

Teachers employed on probation; tenure; compulsory retirement. (1)(a) All teachers in any state university shall initially be employed on probation. The employment shall be permanent, during efficiency and good behavior, after appointment and ac-

and tenured faculty members which was breached by the defendants; (2) that sec. 37.31, creates vested statutory rights which only the legislature, not the Board of Regents, can modify; (3) that the Board of Regent's power to terminate tenure rights because of a financial exigency may not be delegated to the president or chancellors of the university; (4) that the procedures used to terminate plaintiffs violated their due process rights under the Fourteenth Amendment to the United States Constitution and art. 1, secs. 1, 13 and 22 of the Wisconsin Constitution; (5) that the defendants unlawfully

---

ceptance thereof for a 6th consecutive year in the state university system as a teacher. An official leave of absence, part-time or full time, or a teacher improvement assignment shall not constitute a br k in continuous service, nor shall it count toward the time reqr ed to attain tenure.

(b) The employment of a teacher who has become permanently employed under this section may not be terminated involuntarily, except for cause upon written charges. Within 20 days of receiving the written notice that his employment has been terminated, such permanently employed teacher may appeal the termination to the board of regents by a written notice to the president of the board of regents. The board of reg its shall hear the case and provide such teacher with a writ statement as to its decision. The action and decision of the board of regents in the matter shall be final, subject to judicial review under ch. 227. The board of regents scall prescrib by rule, pursuant to ch. 227, dates on or before h teachers employed on probation shall be given written notic reappointment or nonreappointment for another academic year, procedures to be followed with respect to the giving of notice and opportunity to be heard when the employment of a teacher who has become permanently employed is involuntarily terminated and notice and review of any such termination. The board of regents shall also prescribe by rule the procedure for giving a teacher who has not acquired tenure under this section an opportunity to be heard in case his employment is terminated or it is proposed to terminate his employment before the end of the period for which he has been employed, but the decision of the president of the university or the board of regents in such a case shall not be subject to judicial review.

terminated the plaintiffs' contracts without adopting rules pursuant to secs. 37.31 and 227.13, Stats.; and (6) that the terminations abridged plaintiffs' contract rights in violation of art. 1, sec. 10 of the United States Constitution.

We find that the plaintiffs are precluded from bringing this action against the Board of Regents because of the doctrines of sovereign immunity and public officer civil immunity and because they failed to exercise their exclusive method of review through ch. 227 administrative procedures.

■

Article 4, sec. 27, Wisconsin Constitution provides: "The legislature shall direct by law in what manner and in what court suits may be brought against the state." Express legislative consent is required to sue an agency or officer of the state. *Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610 (1976); *Metzger v. Department of Taxation,* 35 Wis.2d 119, 150 N.W.2d 431 (1967); *Cords v. State,* 62 Wis.2d 42, 214 N.W.2d 405 (1974); *Kenosha v. State,* 35 Wis.2d 317, 151 N.W.2d 36 (1967); *Sullivan v. Board of Regents of Normal Schools,* 209 Wis. 242, 244 N.W. 563 (1932).

*Independent Going Concern*

■

The doctrine of sovereign immunity does not apply when an agency has "independent proprietary functions and powers" or is an "independent going concern," *Sullivan v. Board of Regents of Normal Schools,* 209 Wis. at 244; *Lister v. Board of Regents,* 72 Wis.2d at 292–93; *Majerus v. Milwaukee County,* 39 Wis.2d 311, 159 N.W. 2d 86 (1968). *Sullivan* and *Lister* held that the Board of Regents did not have sufficient characteristics to be an "independent going concern." In *Sullivan* the court

found that the board could not collect funds, incur debts or liabilities or dispose of property without legislative approval, and thus, was not sufficiently independent to be sued. *Lister* held that a suit against the Board of Regents for damages constituted a suit against the state and that the board was not an "independent going concern" amenable to suit. The powers now held by the Board of Regents are essentially the same as the powers of the board at the time *Lister* was decided. We conclude that the Board is not an independent going concern for purposes of liability.

### Actions in Excess of Constitutional or Jurisdictional Authority

The doctrine of sovereign immunity also does not bar an action to enjoin officials from acting beyond their constitutional or jurisdictional authority. *Barry Laboratories, Inc. v. State Bd. of Pharm.*, 26 Wis.2d 505, 132 N.W.2d 833 (1965) and *Lister*, 72 Wis.2d 282. Plaintiffs allege that the defendants have violated their due process rights protected by the Fourteenth Amendment of the United States Constitution and art. 1, secs. 1, 13, and 22 of the Wisconsin Constitution and have interfered with their contract rights under art. 1, sec. 10, United States Constitution.

In addition, plaintiffs claim that the defendants acted in excess of their authority by delegating the termination decision to other university officials and by failing to adopt rules governing the termination of plaintiffs' contracts.

Plaintiffs are precluded from asserting the due process issue under the doctrine of *res judicata* because that issue was determined in plaintiffs' federal court action.

*See McCourt v. Algiers,* 4 Wis.2d 607, 610–11, 91 N.W. 2d 194 (1958), where the supreme court found that issues litigated and determined in a federal court action could not be relitigated in a state court action arising from the same facts.

The remaining constitutional issue raised by the plaintiffs alleges a violation of the contract clause of art. 1, sec. 10, United States Constitution.[2] Plaintiffs assert that the tenure statute, sec. 37.31, Stats. (1971), creates a contract between the state and tenured faculty members which only the legislature can modify. In *Morrison v. Board of Education,* 237 Wis. 483, 487, 297 N.W. 383 (1941) the Wisconsin Supreme Court held that the Teacher Tenure Act, sec. 39.40(2), Stats. (1939), was a declaration of legislative policy and did not create a contract between teachers and school boards. Plaintiffs contend that *Morrison* is an aberration in Wisconsin law and that the correct law is represented by *Butler v. The Regents of the University,* 32 Wis. 124 (1873), which described the relationship between a professor and the University of Wisconsin as contractual. More recently, the Wisconsin court in *State ex rel. Farley v. Bd. of School Directors,* 49 Wis.2d 765, 771, 183 N.W.2d 148, 152 (1971), stated that "teacher tenure laws are in derogation of the common law, creating a contract between the parties by operation of law."

The cases presented by the parties show two distinct contexts in which the court considered the effect of the tenure statute. In *Morrison,* 237 Wis. 483, and similar cases, the court considered the legislature's power to alter provisions of the teacher tenure statute. In the cases represented by *Butler,* 32 Wis. 124, and *Farley,* 49 Wis.2d

---

[2] Art. 1, sec. 10, United States Constitution states:

No State shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in pay-

765, the court examined the nature of the relationship between teachers or professors and their respective employers.

### Chapter 227 Review Exclusive

The legislature has in fact consented to judicial review of the board's acts by means of ch. 227 administrative review.

Section 37.31(1)(b), Stats. (1971), provides that the actions and decisions of the board in faculty terminations "shall be final, subject to judicial review under ch. 227."

The scope of review under ch. 227 is outlined in sec. 227.20, Stats. (1971):

(1) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court. The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

(a) Contrary to constitutional rights or privileges, or

(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or

(c) Made or promulgated upon unlawful procedure; or

(d) Unsupported by substantial evidence in view of the entire record as submitted; or

(e) Arbitrary or capricious.

All issues raised by the plaintiffs on this appeal could have been reviewed under ch. 227.

ment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

Plaintiffs claim that since the Board of Regents designated its actions as "layoffs" rather than "terminations," the provision in sec. 37.31, Stats. (1971) for ch. 227 review does not apply. Such reasoning would also force the conclusion that sec. 37.31, does not apply to protect plaintiffs' tenure rights, and remove the basis for plaintiffs' claims.[3]

Even if sec. 37.31, Stats. (1971) does not apply to plaintiffs' case, ch. 227 review was still available. Section 227.15, Stats. (1971) describes the types of administrative decisions which are reviewable under ch. 227.

Administrative decisions, which directly affect the legal rights, duties or privileges of any person, whether affirmative or negative in form, except the decisions of the department of revenue, the commissioner of banking and the commissioner of savings and loan, shall be subject to judicial review as provided in this chapter; but if specific statutory provisions require a petition for re-

---

[3] We do not need to determine in this opinion whether the plaintiffs were "terminated" or "laid off" for purposes of sec. 37.31, Stats. (1971).

The following plaintiffs have subsequently had their layoffs rescinded and have been returned to tenured positions within the university system: Richard Graney, F. Russell James, Jesse Reinstein, C. A. Stern, Thomas White, Douglas Wikum. The remaining eleven plaintiffs have not had their layoff status rescinded and have not been returned to tenured positions within the university system: Glenn Douglas Johnson, Stanley Lokken, Gediminas Machertas, Richard B. Orr, Barbara Segnitz, Thomas Segnitz, Stanley Shaloff, Barbara Sniffen, Robert Weber, Richard Witt and Joseph Starr. Lokken, Machertas, Orr, Shaloff, and Weber are employed outside of the University of Wisconsin System. Johnson, Barbara Segnitz and Starr are presently not working within the university system but received temporary visiting appointments at state universities during their layoff period. Barbara Sniffen is presently employed in a part-time, academic staff position within the university system. Thomas Segnitz and Richard Witt, while still on layoff status, are in full-time academic staff positions with the university system. These positions do not hold tenure status.

hearing as a condition precedent, review shall be afforded only after such petition is filed and determined.

The board's decision to affirm the layoffs of the plaintiffs was a final decision which affected "the legal rights, duties or privileges" of the plaintiffs.

Where a specified method of review is prescribed by the legislature, that method is exclusive. *Kosmatka v. DNR*, 77 Wis.2d 558, 567, 253 N.W.2d 887 (1977); *St. ex rel. 1st Nat. Bank v. M&I Peoples Bk.*, 82 Wis.2d 529, 263 N.W.2d 196 (1978); and *Kegonsa Jt. Sanit. Dist. v. City of Stoughton*, 87 Wis.2d 131, 274 N.W.2d 598 (1979).

In *St. ex rel. 1st Nat. Bank*, 82 Wis.2d 529, the Wisconsin court rejected an attempt to bring a *quo warranto* action to challenge the actions of the banking review board and the commissioner of banking as unconstitutional and in excess of their authority when a statute provided that final orders or determinations of the banking review board were subject to ch. 227 review. The court stated at page 543, that ch. 227 review would have provided a plain, speedy and adequate review of these issues. As in *St. ex rel. 1st Nat. Bank*, 82 Wis.2d 529, the plaintiffs in this case allowed the time for requesting a ch. 227 review to expire.

Since the exclusive method of review was adequate to consider plaintiffs' claims, they are precluded from obtaining a review outside of ch. 227 proceedings.

*Damage Action Against Individual Officers*

Plaintiffs finally claim that the individual members of the Board of Regents are liable in damages for the termination or layoff of the plaintiffs.

The doctrine of sovereign immunity does not apply in suits for damages against officers as individuals.

Although the general rule is that "a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty," *Lister,* 72 Wis.2d at 300, 240 N.W.2d at 621, an officer may be held liable for damages resulting from the negligent performance of a ministerial duty. *Pavlik v. Kinsey,* 81 Wis.2d 42, 50, 259 N.W.2d 709 (1977), and *Lister* at 300–301.

Although plaintiffs argue in terms of the board members' negligent performance of a ministerial duty, the substance of their argument is that the members acted outside of the scope of their official authority.[4] Plaintiffs rely on *Lowe v. Conroy,* 120 Wis. 151, 97 N.W. 942 (1904), which stands for the proposition that public employees may be liable for discretionary acts when acting wholly outside of their authority. *Pavlik,* 81 Wis. 2d 42; Prosser, *Law of Torts* sec. 132 at 991 (Hornbook Series, 4th ed. 1971). In *Lowe,* a public health officer was held liable in damages for ordering the destruction of cattle which he incorrectly diagnosed as being diseased with anthrax bacilli. The court explained that the officer's statutory authority to determine whether an animal is a source of danger to the public health and autho-

---

[4] Plaintiffs initially requested damages against the defendants as individuals in the federal court action filed in May, 1974. In a damage action against a state officer, sec. 895.45(1), Stats., requires service of notice of a claim on the attorney general's office "within 90 days of the event causing the injury, damage or death giving rise to such civil action or civil proceeding. . . ."

Plaintiffs' layoffs became effective June 30, 1974. We can presume that the attorney general was served notice of the federal action commenced in May, 1974, since his office defended the Board of Regents in that action.

rization to subsequently destroy the diseased animal did not protect him from liability for destroying private property which in fact does not endanger public health. *Lowe,* 120 Wis. at 157.

Under such circumstances quasi-judicial officers have been held liable to respond in damages upon the ground that the exercise of this discretion is limited by the superior right guaranteeing to every person immunity from having his private property rights invaded except under the regular course of law, sanctioned by the established customs and usages of the courts. The discretion in which such officers are protected must be limited to the line where their acts invade the private property rights of another, for which invasion the law affords no redress other than an action against the one actually committing the trespass. *Lowe,* 120 Wis. at 159, 97 N.W. at 945.

Section 37.31, Stats. (1971), limits defendants' authority to terminate tenured faculty to discharge for "cause." Discharge for "cause" under sec. 37.31 only includes reasons associated with efficiency and good behavior of tenured teachers. *State ex rel. Schmidtkuntz v. Webb,* 230 Wis. 390, 284 N.W. 6 (1939) ; *State ex rel. Ball v. McPhee,* 6 Wis.2d 190, 94 N.W.2d 711 (1959), overruled on other grounds, *Stacy v. Ashland County Department of Public Welfare,* 39 Wis.2d 595, 602, 159 N.W.2d 630 (1968). Since financial exigency is not a basis for "cause" under sec. 37.41, plaintiffs contend that defendants acted outside their scope of authority in discharging them.

The Board of Regents' authority to terminate employees for reasons of financial exigency is not expressly granted by the statutes.[5] However, this authority is im-

[5] In ch. 335, Laws of 1973, the University of Wisconsin System was merged and a new charter was created. That bill, which became effective July 1, 1974, included a provision, sec. 36.21,

plied under the general powers of the board for state universities governed by ch. 37, Stats. (1971), which provide that, "the board of regents shall possess all other powers necessary or convenient to accomplish the objects and perform the duties prescribed by law." Sec. 37.02(1), Stats. (1971).

Defendants present facts in affidavits of university officials that in 1973, the legislature reduced the university budget for the following biennium and introduced a funding formula which tied budget levels to the number of actual student credit hours. A decline in enrollment at the campuses throughout the state resulted in a loss of instructional funds. In order to comply with the legislature's budgetary restrictions, the Board of Regents

Stats., expressly authorizing the Board of Regents to terminate tenured faculty when a financial exigency exists.

Notwithstanding ss. 36.13(4) and 36.15, the board may, with appropriate notice, terminate any faculty or academic staff appointment when a financial emergency exists. No person may be employed at the institution within 2 years to perform reasonably comparable duties to those of the person whose appointment was terminated without first offering such person a reappointment. The board, after consultation with the faculty and chancellor of each institution, shall adopt procedures to be followed in the event of termination under this section. Sec. 36.21, Stats.

Plaintiffs contend that this subsequent express authorization indicates that the board previously had no power to terminate faculty for reasons of financial exigency. We are persuaded, however, that this is not a necessary conclusion. First, the bill which introduced this express power was part of an extensive merger bill which reorganized the university system and did not solely focus on the board's power to terminate. Second, in addition to articulating the board's authority to terminate, the statutory provision outlines the procedure to be implemented by the board and the rights of the terminated faculty.

Thus, the statute could be said to indicate the parameters of the Board of Regent's power in the newly merged system and to eliminate any prior ambiguity as to the method of exercising this power.

determined that in addition to firing nontenured employees, it was necessary to lay off or terminate tenured faculty.

Several jurisdictions have recognized that educational governing boards possess an inherent authority to discharge tenured faculty for reasons of financial exigency which is distinct from the authority to discharge for cause. *Funston v. District School Board,* 130 Or. 82, 278 P. 1075 (1929); *Downs et al. v. Board of Education of Hoboken Dist.,* 181 A. 688 (1935); *Ehret v. Kulpmont Bourough School District,* 333 Pa. 518, 5 A.2d 188 (1939); *State ex rel. Frank v. Meigs County Board of Education,* 140 Ohio St. 381, 24 Ohio Ops. 303, 44 N.E. 2d 455 (1942); *Miller v. Stoudnour,* 148 Pa. Super. 567, 26 A.2d 113 (1942); *Appeal of Ritzie,* 372 Pa. 588, 94 A.2d 729 (1953); *Levitt v. Board of Trustees of Nebraska State Colleges,* 376 F. Supp. 945 (D. Neb. 1974); *Cf. Browzin v. Catholic University of America,* 527 F.2d 843, 847 (1975); *Krotkoff v. Goucher College,* 585 F.2d 675 (C.A. 4th Cir. 1978); *Steinmetz v. Bd. of Trustees, etc.,* 68 Ill. App.3d 83, 24 Ill. Dec. 604, 385 N.E.2d 745 (1978); Annot., 100 A.L.R.2d 1159–60, sec. 8 (1965).

The court in *Krotkoff,* 585 F.2d at 679–80, reconciled this power to terminate with the concept of tenure:

A concept of tenure that permits dismissal based on financial exigency is consistent with the primary purpose of tenure. Tenure's "real" concern is with arbitrary or retaliatory dismissals based on an administrator's or a trustee's distaste for the content of a professor's teaching or research, or even for positions taken completely outside the campus setting. . . . It is designed to foster our society's interest in the unfettered progress of research and learning by protecting the profession's freedom of inquiry and instruction." *Browzin v. Catholic University,* 174 U.S. App. D.C. 60, 63, 527 F.2d 843, 846 (1975). *See also Rehor v. Case Western Reserve University,* 43 Ohio St.2d 224, 331 N.E.2d 416, 421 (1975); Note, Dismissal of Tenured Faculty for Reasons of

Financial Exigency, 51 Ind. L.J. 417 n. 2 (1976). Dismissals based on financial exigency, unlike those for cause or disability, are impersonal; they are unrelated to the views of the dismissed teachers. A professor whose appointment is terminated because of financial exigency will not be replaced by another with more conventional views or better connections. Hence, bona fide dismissals based on financial exigency do not threaten the values protected by tenure.

Several of the cases listed above were decided on the bases of statutory interpretation of general board powers, *Steinmetz*, 385 N.E.2d 745;[6] *Levitt*, 376 F. Supp. 945;[7] *Ehret*, 5 A.2d 188;[8] interpretation of contract pro-

---

[6] The court in *Steinmetz*, 385 N.E.2d at 748, found that the board possessed sufficient powers to dismiss for reasons of economy based on a statute of general powers similar to sec. 37.02 (1), Stats. (1971):

"The board of any community college district has the powers enumerated in Sections 3–31 through 3–43. This enumeration of powers is not exclusive but the board may exercise all other powers, not inconsistent with this Act, that may be requisite or proper for the maintenance operation a d development of any college or colleges under the jurisdiction of the board." (Ill. Rev. Stats. 1975, ch. 122, par. 103–30.)

[7] Neb. Rev. Stats. sec. 85–304 (Reissue 1971) provides in relevant part:

Board of trustees; powers, enumerated. The board shall have the power:

(1) To appoint a president and such other persons as may be required for each school;

(2) To fix their compensation and prescribe their duties;

(3) To remove all persons appointed, but the affirmative votes of four members of the board shall be necessary to remove a president or an assistant during the time for which such persons were appointed.

[8] The court in *Ehret*, 5 A.2d at 192, held that section 1201 of the code, as amended, 24 P.S. sec. 1121, which provides that, "The Board of School Directors in every school district . . . shall employ the necessary qualified teachers to keep the public schools open in their respective districts in compliance with the provisions of this act," must be read in light of the state constitutional provision, art. 10, sec. 1, which commands the legislature to "pro-

visions, *Browzin*, 527 F.2d at 845; and general custom and understanding by the academic community of the concept of tenure, *Krotkoff*, 585 F.2d 675.[9] Nevertheless, these courts noted the existence of an inherent power to terminate for reasons of financial emergency.

Courts which based their decision solely on an inherent power to terminate for reasons of financial emergency in the face of a tenure protection statute cited sound educational policy and common sense in support of their conclusions.

We have carefully read the Tenure of Office Act, particularly the portions the plaintiff relies upon, but find it impossible to draw the conclusion which counsel suggests. To us it seems that plaintiff's position can be

vide for the maintenance and support of a thorough and efficient system of public schools." Taken together, the court held that the board had the authority to dismiss unnecessary teachers for reasons of economy.

[9] The court in *Krotkoff*, 585 F.2d at 679, based its holding on an interpretation of the 1940 Statement of Principles on Academic Freedom and Tenure developed by the Association of American Colleges and American Association of University Professors which states in part:

After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their services should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.

In the interpretation of this principle it is understood that the following represents acceptable academic practice:

. . . .

(5) Termination of a continuous appointment because of financial exigency should be demonstrably bona fide.

The court found that this statement represented a common understanding by the academic community that tenure does not exempt faculty from dismissal for financial reasons. "Probably because it was formulated by both administrators and professors, all of the secondary authorities seem to agree that it is the 'most widely-accepted academic definition of tenure.'" *Krotkoff*, 585 F.2d at 679.

sustained only in the event that words can be found in the act which undertake to provide teachers, situated like the plaintiff, with a life income conditioned only upon their proper conduct. Although plaintiff's counsel has apparently made a painstaking analysis of the act, he has pointed out no such provision. In its absence he argues that the Tenure of Office Act regulates the discharge of teachers, and that since a severance of employment, by reason of a program of economy or a lack of further need for the teacher's services, is not expressly mentioned in the act, such developments do not permit the board to dismiss a teacher, who holds a life certificate. Before accepting that conclusion, it may be well to consider briefly the reasons which underlie legislation regulating the discharge of teachers and other public employees. When such an employee's services must be discontinued because of the demands of economy, or by reason of a lack of pupils, the cause does not have its inception in the teacher, but arises from a source foreign to her and over which she possesses no control. But when her misconduct results in a complaint and subsequently in a dismissal, the cause is personal to herself. Because a ground of removal of the type first above mentioned is one which she did not create and which she could not explain away, statutes of this kind, which regulate the dismissal of teachers and other public employees generally, are interpreted as intending only a regulation of dismissal for causes personal to the employee. An investigation into a situation of the type first mentioned would constitute an inquiry into the policy of the board, and the wisdom of the course it adopted. It is not difficult to perceive that a few decisions by the reviewing tribunal upon matters of policy, adverse to the board, would soon dispossess the latter of its authority and usurp it to the former. *Funston* 278 P. at 1076.

In *Appeal of Ritzie,* 94 A.2d at 731, the court reaffirmed the holding of *Ehret,* 5 A.2d 188, and concluded that to require the board to retain a tenured teacher even though his position had been abolished "is to fly in the face not only of reason but of authority."

The Ohio court in *State ex rel. Frank,* 44 N.E.2d at 456 would not accept the contention that the tenure

statute prevented the school board from terminating tenured teachers for reasons of economy.

To hold that a county board of education, having once established a position in the county public schools, has no power under the law to abolish it, even though there be a sufficient cause, would, in the opinion of the court, seriously challenge the constitutionality of the law itself.

The Pennsylvania court in *Miller*, 26 A.2d 113, cited its earlier decision in *Ehret*, 5 A.2d 188, and added at page 114,

If plaintiff must be retained under the conditions which admittedly exist in this case, then the board has no control over the school district's finances or over school policy. The legislature in the Teachers' Tenure Act of 1937 manifested no intention to produce such a result.

The court in *Ehret*, 5 A.2d at 193, cited economic efficiency as the underlying policy basis for the board's power to terminate "unnecessary" teachers:

When an entire department is lawfully abolished for valid reasons, which may include financial ones, in the interest of a more efficient system, the teachers in that department can be dismissed. Economy is desirable in any governmental function, and we cannot so view the present legislation as to prevent the abolition of a department for this purpose.

The court in *Downs*, 181 A. at 688, simply concluded, without presenting any analysis, that the board could reduce staff in the interest of economy.[10]

---

[10] The Teachers' Tenure Act (4 Comp. St. 1910, p. 4763, sec. 106b; N.J. St. Annual 1935, secs. 185–106a, 185–106c) is similar to Wisconsin sec. 37.31, Stats. (1971):

No teacher, principal, or supervising principal under the tenure referred to in section 18:13–16 of this title shall be dismissed or subjected to a reduction of salary in the school district except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause and after a written charge of the cause or causes has been preferred against him, signed by the person or persons

Three jurisdictions have rejected the contention that boards of education have the power to terminate for reasons of economy when the tenure statute limits discharges for cause. In *Spencer v. Laconia School District,* 218 A.2d 437 (N.H. 1966), the court found that in light of the statutory history of the teacher tenure statute, the board only had authority to dismiss teachers for reasons specified in the statute. The statutory history showed that a prior version of the statute included dismissal when the teachers' services " 'were deemed unprofitable to the school.' " *Spencer,* 218 A.2d at 440. Since this basis for dismissal had been excised by the legislature and since the powers of local school boards had traditionally been limited with regard to hiring and terminating staff, the court found that the school board did not have the authority to dismiss for financial reasons.

In Louisiana, the state court recognized the right of school boards to abolish tenured positions, but maintained that the tenured teacher must be retained on the payroll.

An honest discontinuance of his office does not automatically·remove a permanent teacher from the school system. He remains therein and should forthwith be placed in a position of standing equal to that formerly held, if it be possible. In any event, he is nonetheless entitled to the salary attributable to the status he has attained even though he be re-employed in a position of lesser rank. *State ex rel. Parker v. Vernon Parish School Board,* 225 La. 297, 72 So.2d 512. *Dugas v. Ascension Parish School Board,* 228 La. 80, 81 So.2d 817, 819 (1955).

making the same, and filed with the secretary or clerk of the board of education having control of the school in which the service is being rendered, and after the charge has been examined into and found true in fact by the board of education upon reasonable notice to the person charged, who may be represented by counsel at the hearing. Charges may be filed by any person, whether a member of the school board or not.

Although the court did not discuss its reasons for adopting this view, the balance of the opinion reveals that the court believed that the board had abolished the plaintiff's position for personal reasons rather than reasons of economy.

The Arizona case cited by plaintiffs is not applicable here. In *Sarle et al. v. School Dist. No. 27 of Pima County*, 255 P. 994 (1927), the court held that the school board could not insert a provision allowing termination on 30-day notice in an employment contract of a teacher protected by the state tenure act. The court found that such a provision violated the spirit and policy of the teacher tenure law, which enumerates the causes for which a teacher can be dismissed. The contract provision did not specify reasons for termination and thus would allow school boards to terminate at will. Thus the court did not address the specific issue of termination for financial exigency.

The reasons cited by the courts which recognize the power of educational governing boards to terminate for financial exigency are more persuasive than those presented by the courts in Louisiana and New Hampshire. The Louisiana court's analysis is not clear and the New Hampshire statutory history is dissimilar to Wisconsin statutes governing tenure and the Board of Regent's powers.

In exercising their broad authority "to accomplish the objects and perform the duties prescribed by law," sec. 37.02(1), Stats. (1971), the members of the Board of Regents determined, in their discretion, that the legislature's grant of limited funds required the layoff or dismissal of tenured faculty members. The exercise of this discretion did not interfere with the protection afforded by the tenure statute against arbitrary dismissal of tenured faculty for personal reasons.

Since the members of the board exercised a discretionary power within the scope of their authority, plaintiffs must allege malicious, willful, or intentional misconduct by the board members in order to maintain a damage action against them as individuals. *Lister,* 72 Wis.2d at 302. There is no such allegation in this case.

*By the Court.*—Order affirmed.