**Worden W. HAHN, Appellant,**

v.

**UNIVERSITY OF the DISTRICT OF COLUMBIA, Appellee.**

No. 00–CV–1345.

District of Columbia Court of Appeals.

Submitted Oct. 4, 2001.
Decided Jan. 17, 2002.

James B. Francis, Washington, DC, was on the brief for appellant.

Robin C. Alexander, Washington, DC, was on the brief for appellee.

Before TERRY and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge:

Appellant Hahn was released in 1999 from his employment as a professor at the University of the District of Columbia pursuant to a reduction in force ("RIF"). He appealed his termination to the University president, but his appeal was rejected. He then filed a petition for review of the University's action in the Superior Court. The court denied the petition, and Dr. Hahn brought this appeal.

In all respects but one, we affirm the judgment of the trial court. We hold that the University had the power to conduct the RIF, that Dr. Hahn's status as a tenured professor did not entitle him to heightened seniority because that was precluded by a collective bargaining agreement, and that Dr. Hahn was properly subject to the 1999 RIF. We remand the case in part, however, because the University president did not make any findings on the question of whether Dr. Hahn held his faculty position "at large" within the College of Business and Public Management and, if so, whether he was or is qualified to teach in another department.

I

Dr. Hahn was employed under contract, beginning in 1992, as the dean of the College of Business and Public Management at the University. During the summer of 1993, Dr. Hahn's contract was canceled and replaced with an "at will" executive appointment as a result of changes in the University structure. His letter of appointment stated that Dr. Hahn's "executive appointment shall also include academic title and rank with tenure as a full professor in the College of Business and Public Management." In 1994 the College of Business and Public Management was merged into the College of Professional Studies, and Dr. Hahn lost his position as dean; however, he remained a faculty member with tenure in the College of Professional Studies.

During the 1996–1997 academic year, the University was faced with a severe financial crisis. As a result, the University instituted a reduction in force ("the 1997 RIF"). In authorizing the 1997 RIF, the District of Columbia Financial Responsibility and Management Assistance Authority, popularly known as the "Control Board," gave the University permission to abrogate provisions of the collective bargaining agreement ("CBA") between the University and the faculty. Among other things, the RIF plan adopted by the University contravened the CBA by allowing the University to retain any faculty member who would otherwise be targeted for release if that faculty member had "[a] record of receiving grant awards, contracts, and/or other agreements that have generated … revenue for [the University]." Although Dr. Hahn was initially released pursuant

to the 1997 RIF, his release was overturned on appeal because he had received several such grants during the 1996–1997 academic year.

The University of the District of Columbia Faculty Association ("the Union"), however, filed a suit in federal court challenging the University's RIF procedures. The United States District Court for the District of Columbia ruled that the Control Board had exceeded its authority in granting the University permission to abrogate the CBA. *University of the District of Columbia Faculty Ass'n/NEA v. Board of Trustees of the University of the District of Columbia,* 994 F.Supp. 1 (D.D.C.1998). That ruling was affirmed on appeal. *University of the District of Columbia Faculty Ass'n/NEA v. District of Columbia Financial Responsibility & Management Assistance Authority,* 333 U.S.App.D.C. 325, 163 F.3d 616 (1998). As a result, the University reached an agreement with the Union to reinstate those faculty members who were RIFfed out of seniority order and to conduct a corrective RIF ("the 1999 RIF") to facilitate the rehiring of the wrongly terminated faculty members. Dr. Hahn was identified as one of the faculty members retained out of order and was thus subject to the 1999 RIF.

Dr. Hahn appealed his termination under the 1999 RIF to the University president. In that appeal, Dr. Hahn claimed that his seniority had been wrongly calculated because of, among other things, his tenured status and his unique "at large" position within the College of Business and Public Management. He also asserted that he was not subject to the 1999 RIF because he had not been improperly retained under the 1997 RIF. The University president rejected Dr. Hahn's arguments. As to Dr. Hahn's first point, the president stated that tenure did not entitle him to heightened seniority and that, even if it did, the CBA explicitly stated that the

granting of tenure "shall not constitute relief from the application of the full provisions of this Agreement." The CBA, in other words, superseded the regulations governing tenure to the extent that they were inconsistent. The president also ruled that "for the same reason" Dr. Hahn's claim of "at large" tenure "does not apply." Finally, the president rejected Dr. Hahn's contention that he had not been improperly retained in 1997, and thus ruled that he was subject to the 1999 RIF. Dr. Hahn then sought review in the Superior Court, which upheld the decision of the University president.

## II

■ We review the affirmance of an administrative action by the trial court in the same way that we would examine the agency's ruling if it came before us on direct review from the agency. *See, e.g., Bufford v. District of Columbia Public Schools,* 611 A.2d 519, 522 (D.C.1992). That is, we examine the administrative record "to determine if there has been procedural error, if there is substantial evidence in the record to support the action of the [agency], or if the action is in some manner otherwise arbitrary, capricious, or an abuse of discretion." *Kegley v. District of Columbia,* 440 A.2d 1013, 1019 (D.C.1982) (citation omitted); *accord, e.g., Harrison v. Board of Trustees of the University of the District of Columbia,* 758 A.2d 19, 22 (D.C.2000); *Stokes v. District of Columbia,* 502 A.2d 1006, 1010 (D.C. 1985). "We cannot retry the facts or rehear the evidence." *Shepherd v. District of Columbia Dep't of Employment Services,* 514 A.2d 1184, 1186 (D.C.1986). Guided by these basic principles, we address Dr. Hahn's several claims of error.

Dr. Hahn makes four arguments on appeal. First, he maintains that the University lacked the power to conduct a RIF at all. Second, he argues that he was not subject to the CBA. Third, he claims that

his tenured status in general and his "at large" faculty position in particular specifically gave him heightened seniority which made him exempt from the 1999 RIF. Finally, Dr. Hahn contends that he was not subject to the 1999 RIF because he had not been improperly retained under the 1997 RIF.

### A. The University's Power to Conduct the RIF

Dr. Hahn argues that the University exceeded its authority to conduct a RIF because its current regulations governing RIFs do not apply to faculty members. According to the University regulations, faculty members may be separated from the University in five ways, including a RIF "in accordance with the provisions of §§ 1451 through 1459 of this chapter." 8 DCMR § 1450.1(e) (1988). In 1992 the University revised its RIF regulations by repealing the existing sections 1451 through 1459 and promulgating new regulations in a new chapter 18. *See* 39 D.C. Register 4795 (1992). Dr. Hahn asserts that the new rules in chapter 18 do not explicitly apply to faculty and that, because the University repealed the faculty RIF provisions in sections 1451–1459, it currently has no provisions at all governing RIFs of faculty members and therefore lacks the authority to conduct one.

■ There are two problems with this argument. First, Dr. Hahn did not make it either before the University president or in the Superior Court. As a result, we cannot consider it either. "[C]ontentions not urged at the administrative level may not form the basis for overturning the decision on review." *Goodman v. District of Columbia Rental Housing Comm'n,* 573

A.2d 1293, 1301 (D.C.1990) (citation omitted);[1] *accord, e.g., Dietrich v. District of Columbia Board of Zoning Adjustment,* 320 A.2d 282, 287 (D.C.1974). Even if we were to reach the issue, however, the other problem is that the University's RIF regulations as published in chapter 18 do cover faculty members. Those regulations apply to "all employees of the University in the Educational Service, except as provided otherwise in this section." 8 DCMR § 1800.1, 39 D.C. Register 4795. The Educational Service includes faculty members. *See* 8 DCMR § 1100.1 (1988) (Educational Service consists of "all employees of the University except" those in six categories, none of which includes faculty). Thus the University was acting in a manner consistent with its regulations when it conducted the RIF.

### B. Tenure and the Collective Bargaining Agreement

■ Dr. Hahn asserts that his status as a tenured faculty member protects him from the RIF. In addressing this assertion, the University president concluded, first, that tenure did not entitle Dr. Hahn to heightened seniority, and, second, that even if it did, the provisions of the CBA precluded tenured faculty from receiving special protection during a RIF. Dr. Hahn disputes both of those conclusions.

The CBA contains several provisions concerning RIFs. It also states that "[t]he granting of tenure to a bargaining unit member shall not constitute relief from the application of the full provisions of this Agreement." Because the University regulations provide that the CBA overrides the regulations if they are inconsistent, *see* 8 DCMR § 1800.3, 39 D.C. Register 4795,[2]

---

**1.** The case law recognizes a narrow exception to this rule on a showing of "exceptional circumstances ... when the interests of justice so require," *Goodman,* 573 A.2d at 1301

(citations omitted), but we see no such circumstances in this case.

**2.** Section 1800.3 provides:

a tenured faculty member is given no heightened seniority for the purposes of a RIF conducted pursuant to the CBA. Dr. Hahn argues, however, that for two reasons the CBA does not apply to him.[3]

■ The first reason advanced by Dr. Hahn is that that the CBA does not apply because it has expired. Article XXXII of the CBA states that it is effective from October 1, 1988, through September 30, 1993, and it is undisputed that the University and the Union have not entered into a successor agreement. Under "general principles of contract law," however:

> [W]hen a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or through conduct, that it no longer wishes to continue to be bound thereby, or both parties mutually intend that the terms not survive.

*Luden's, Inc. v. Local Union No. 6, Bakery, Confectionery & Tobacco Workers' Int'l Union*, 28 F.3d 347, 355–356 (3d Cir. 1994); *see also* 2 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 6:42, at 452 (Richard A. Lord 4th ed.1991). This rule has been applied in cases involving CBAs. *See Sheriff v. Medel Electric Co.*, 412 A.2d 38, 42 (D.C.1980); *Luden's*, 28 F.3d at 355–356; *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113 (7th Cir.1998) (" 'conduct manifesting an intention to

abide and be bound by the terms of an agreement' suffices to support a finding of a CBA") (citation omitted). *But see Williamsbridge Manor Nursing Home v. Local 144, National Health & Human Services Employers Union*, 107 F.Supp.2d 222, 226 (S.D.N.Y.2000) (declaring that "[p]ost-CBA expiration conduct occurs within a different legal paradigm than conduct pursuant to an ordinary employment contract"); *Teamsters Local 122 v. August A. Busch & Co.*, 932 F.Supp. 374, 380 (D.Mass.1996) (declining to follow *Luden's* ).

■ The *Luden's* doctrine is well established, and we adhere to it in this case. We hold, accordingly, that because the parties to the CBA, which expired in 1993, "continue to act as if they are performing under [that] contract," and because there is no indication that either the University or the Union has a contrary intention, the material terms of the CBA "survive intact," *Luden's*, 28 F.3d at 355, and are binding on both parties. Both the University and the Union appear to be abiding by the terms of the CBA even though it expired more than eight years ago. Indeed, the suit in federal court, brought by the Union in response to the 1997 RIF, as well as the settlement agreement reached after the suit ended, shows plainly that both parties are adhering to the RIF provisions of the expired CBA. In these circumstances, we hold that the provisions of the

---

To the extent that specific provisions of this chapter [of the regulations] are inconsistent with the provisions of a collective bargaining agreement currently in force between the University and employees who would otherwise be covered by the provisions of this chapter, those specific, inconsistent provisions of this chapter shall be superseded by the applicable provisions of the collective bargaining agreement and shall not apply to employees covered by the collective bargaining agreement.

"This chapter" of the regulations is chapter 18, which deals exclusively with RIFs.

**3.** Although the trial court held that Dr. Hahn waived this argument because he did not bring it up in his appeal to the University president, it reached the issue anyway. Dr. Hahn contends that he did not waive the argument, and we agree. Because it was first made in response to the University president's ruling that his tenured status was nullified by the provisions of the CBA, the argument was not waived and is properly before this court.

CBA are still in effect and apply to Dr. Hahn.

Dr. Hahn's alternative argument is that the CBA does not apply to him because he is not a member of the bargaining unit, and thus his tenure is of a different nature from that to which the CBA refers. According to Dr. Hahn, he received his tenure by executive appointment when he was appointed dean pursuant to 8 DCMR § 212.4,[4] not through the normal tenure process described in 8 DCMR §§ 1460–1470.[5] Because "tenure by executive appointment and tenure by UDC's tenure committee are creatures of different origin," Dr. Hahn maintains, he was not given tenure as "a bargaining unit member" within the meaning of the CBA, and thus the CBA provisions nullifying the effect of tenure do not apply to him. We are not persuaded.

■■■■ There is no basis to conclude that because Dr. Hahn's tenure had a different origin from tenure granted under the general tenure regulations, it is somehow of a different species. The University regulations do not distinguish between grants of tenure under 8 DCMR § 212.4

and those made in the more traditional way under 8 DCMR §§ 1460–1470. In fact, 8 DCMR § 1465, which sets forth the "rights, privileges, and responsibilities" of tenured professors, speaks only of tenured faculty in general, and thus by its silence suggests that the two different types of tenure are identical in all but origin. We find no support in the regulations, or anywhere else, for Dr. Hahn's contrary argument.[6]

### C. "At Large" Tenure

■■■■ Dr. Hahn next argues that he was improperly subjected to the 1999 RIF because his seniority was miscalculated as a result of a disagreement over the scope of his tenure grant. Pointing to the letter giving him "tenure as a full professor in the College of Business and Public Management" when he was appointed dean in 1993, he maintains that his tenure was "at large" within the college and not specific to any department. The University president ruled that this claim was also barred by the tenure nullification provision in the CBA. Dr. Hahn's contention about the scope of his tenure, however, seems to

---

4. 8 DCMR § 212.4, 40 D.C. Register 3353 (1993), states: "A person newly hired for the position of Provost or academic dean may be granted academic title and rank with tenure in the department in which he or she is qualified."

5. 8 DCMR §§ 1460–1470 (1988), captioned "University Tenure: General Policy," provides for the granting of tenure after review and evaluation by a tenure committee.

6. Because the University president's ruling that the CBA applied to Dr. Hahn and barred his tenure claims is supported by the record and at least *sub silentio* by the regulations, we need not consider Dr. Hahn's additional argument that his tenured status protected him from the RIF. We note, however, that even if the CBA did not apply to Dr. Hahn, the University president's determination that Dr. Hahn's tenured status did not shield him from

the RIF was not arbitrary or capricious. *See Board of Community College Trustees v. Adams,* 117 Md.App. 662, 670, 701 A.2d 1113, 1117 (1997) ("the great weight of authority supports a holding that tenured professors may be terminated for reasons unrelated to them personally—such as discontinuance of courses, school consolidations, and ... financial shortfalls"); *Graney v. Board of Regents,* 92 Wis.2d 745, 759, 286 N.W.2d 138, 145–146 (1979) ("Several jurisdictions have recognized that educational governing boards possess an inherent authority to discharge tenured faculty for reasons of financial exigency which is distinct from the authority to discharge for cause" (citations omitted)); *see also Krotkoff v. Goucher College,* 585 F.2d 675, 679–680 (4th Cir.1978) (noting that dismissal of tenured faculty based on financial exigency "is consistent with the primary purpose of tenure").

relate more to his seniority on the retention list than to any privilege of his tenured position.[7] The gist of his argument is that because he was given tenure while he was dean of the college, his seniority should be determined in relation to the college as a whole, not just to the department in which he was teaching.

At best, the scope of Dr. Hahn's tenure appointment is ambiguous. The letter granting him tenure also noted that "[u]pon termination of this executive appointment, you have the right to remain at the University as a member of the faculty ... *in the appropriate department*" (emphasis added). Additionally, the regulation under which he was given tenure states, "A person newly hired for the position of Provost or academic dean may be granted academic title and rank with tenure *in the department* in which he or she is qualified." 8 DCMR § 212.4 (emphasis added). Dr. Hahn interprets the letter and the regulation to mean that because he was dean of the entire college, his grant of tenure enabled him to teach in any department in the college in which he was qualified. The difficulty with this argument is that the record does not tell us whether or not Dr. Hahn was qualified to teach in any other department.[8] Further complicating the matter is the fact that Dr. Hahn was given tenure as the dean of the College of Business and Public Management, not the College of Professional Studies, into which the College of Business and Public Management later merged. At the time of the merger he received an offer to remain as a faculty member "in the College of Professional Studies," but he was never dean of that college, which appears to have a much broader educational reach.

Although Dr. Hahn's claim to "at large" seniority is dubious, he may be entitled to a position if the University were to find that his tenure was granted "at large" and that he was qualified for another position within the College of Professional Studies. Because the record is silent as to his claim for "at large" seniority and his qualifications to teach in other departments, the case must be remanded to the University so that it, in the first instance, may make those determinations.

### D. *The Applicability of the RIF to Dr. Hahn*

■ Dr. Hahn's final argument is that he was not subject to the 1999 RIF because he was never "retained" under the 1997 RIF. He contends that he was actually released under the 1997 RIF and thus was not in the class of those improperly retained in February 1997. The University president found, however, that Dr. Hahn was retained in 1997 after he established that he had "a record of receiving grant awards" that generated revenue for

---

7. Dr. Hahn's characterization of this argument is confusing. In his briefs before the trial court and this court, he combined this argument with his claim about the protected status that his tenure supposedly affords him. In his appeal to the University president, however, he characterized it as a seniority argument, stating, "[M]y seniority is at-large, not departmental." The trial court also interpreted the argument as a claim based on seniority rather than a claim of tenure. We believe it is best characterized as a seniority argument, and we construe Dr. Hahn's references to "tenure" in the sense of a "mode of holding or occupying" a position, rather than an entitlement to a protected position. *See* BLACK'S LAW DICTIONARY 1024 (abridged 6th ed.1991).

8. Dr. Hahn was a professor in the Marketing Department. The other departments in the College of Professional Studies are: Architecture, Design and Planning; Accounting, Finance and Economics; Computer and Information Science; Engineering and Technology; Health Sciences; Management and Office Systems; and Urban Affairs and Geography.

the University. That retention, unfortunately for Dr. Hahn, was based on provisions of the University RIF plan abrogating the CBA, and it had to be rescinded after the federal courts ruled that the University and the Control Board had no authority to override the CBA. Because Dr. Hahn was retained, albeit improperly, during the 1997 RIF, he became subject to the 1999 RIF. The University president's finding to that effect was not arbitrary or capricious, or erroneous as a matter of law, and hence must be upheld. *See Kegley*, 440 A.2d at 1019.

## III

We reject Dr. Hahn's argument that the University lacked the power to conduct a RIF, both because he did not raise the issue below and because the argument is, in any event, without merit. We affirm the decisions of the University president that the CBA barred Dr. Hahn's tenure claims and that Dr. Hahn was properly subject to the 1999 RIF. We remand the case to the trial court, with directions to remand it to the University to determine whether Dr. Hahn's faculty position was "at large" and, if so, whether he is qualified to teach in another department within the College of Professional Studies.

*Affirmed in part, remanded in part.*